Clay A. Young
Kendra E. Bowman
DELANEY WILES, INC.
1007 W. 3rd Ave., Ste. 400
Anchorage, AK 99501
(907) 279-3581 *telephone*
(907) 277-1331 *facsimile*
cay@delaneywiles.com
keb@delaneywiles.com

Kevin D. Hartzell (pro hac vice)
Angela Probasco (pro hac vice)
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE 68102
(402) 346-6000 *telephone*
(402) 346-1148 *facsimile*
Kevin.Hartzell@kutakrock.com
Angela.Probasco@kutakrock.com

*Attorneys for Plaintiff ALPS Property & Casualty Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY, f/k/a Attorneys Liability Protection Society, Inc., A Risk Retention Group,<br><br>        Plaintiff,<br><br>   v.<br><br>MERDES & MERDES, P.C.; MERDES LAW OFFICE, P.C.; and WARD M. MERDES,<br><br>        Defendants. | Case No. 4:14-cv-00002-SLG |

**PLAINTIFF ALPS PROPERTY & CASUALTY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff ALPS Property & Casualty Insurance Company, f/k/a Attorneys Liability

Protection Society, Inc., A Risk Retention Group ("ALPS"), pursuant to Federal Rule of Civil

Procedure 56 and D.Ak. L.R. 7.1, 10.1, and 56.1, hereby moves for summary judgment on its claims for declaratory relief against Defendants Merdes & Merdes, P.C. ("Merdes Firm"), Merdes Law Office, P.C. ("Merdes Law Office"), and Ward M. Merdes ("Ward Merdes"). This motion is supported by the following memorandum of points and authorities, attached exhibits, contemporaneously filed request for judicial notice,[1] and other documents and pleadings filed with the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

In this coverage action, ALPS seeks the entry of a judgment declaring Lawyers Professional Liability Insurance Policy Number ALPS3392-15 issued by ALPS to the Merdes Firm for the policy period July 18, 2012 to July 18, 2013 ("Merdes Firm Policy") and Lawyers Professional Liability Insurance Policy Number ALPS16796 issued by ALPS to the Merdes Law Office for the policy period April 1, 2013 to April 1, 2014 ("Merdes Law Office Policy") (collectively, "Policies") do not afford coverage for the lawsuit styled *Leisnoi, Inc. v. Merdes & Merdes, P.C., Merdes Law Office, P.C., and Ward M. Merdes*, Alaska Superior Court, Case No. 3AN-13-7180CI ("Underlying Suit").

As discussed below, no genuine issue of material fact exists regarding the lack of coverage for the Underlying Suit under both Policies because the Underlying Suit is not a claim first made during the Policies' respective policy periods. Moreover, even if the Underlying Suit were a claim first made during the Policies' respective policy periods, the Underlying Suit would still not be covered because (1) as of the effective date of both Policies, Ward Merdes "knew or

---

[1]Pursuant to Federal Rule of Evidence 201 and D.Ak. L.R. 7.1(d)(2), ALPS requests the Court take judicial notice of documents obtained from the Alaska Superior Court that are attached to ALPS's contemporaneously filed request for judicial notice.

reasonably should have known or foreseen that" the acts alleged in the Underlying Suit "might be the basis of a claim"; (2) the Underlying Suit does not arise from an act, error, omission, or personal injury that occurred on or after either of the Policies' respective loss inclusion and retroactive dates; (3) the Underlying Suit does not seek "damages"; and (4) the Underlying Suit is otherwise excluded from coverage.

Accordingly, ALPS is entitled to judgment as a matter of law on its claims for declaratory relief, and its motion for summary judgment should be granted in its entirety.

## II.     STATEMENT OF UNDISPUTED FACTS

### A.     Stratman Litigation

On December 3, 1985, Omar Stratman filed a lawsuit against Leisnoi Incorporated ("Leisnoi"), an Alaska native corporation formed under the Alaska Native Claims Settlement Act, styled *Stratman v. Leisnoi, Inc.*, Alaska Super. Ct. Case No. 3AN-85-16520 CI ("Leisnoi Suit"), in which Stratman disputed Leisnoi's certification of and title to certain real property on and near Kodiak Island.  (Doc. 1,[2] ¶ 7; Doc. 12, ¶¶ 7-8; Doc. 14, ¶ 7[3]; Request for Judicial Notice, Exhibit A at page 13)  In January 1988, Leisnoi retained attorney Ed Merdes (Ward Merdes' father) to represent it in the Leisnoi Suit and related litigation matters ("Stratman Litigation").  (Doc. 1 at ¶ 8; Doc. 12 at ¶ 8; Doc. 14 at ¶ 8[4])  In conjunction with Leisnoi's retention of Ed Merdes, Leisnoi executed a written contingency fee agreement pursuant to which Leisnoi agreed to convey "'an undivided thirty percent . . . interest in all lands and/or settlement

---

[2]"Doc. ___" refers to the filing numbers in Case No. 3:13-cv-00144-SLG.

[3]On October 4, 2013, ALPS filed an amended complaint to include additional allegations related to the amended complaint filed in the Underlying Suit (Doc. 14); however, Defendants failed to file an answer or otherwise respond to ALPS's amended complaint.  *See* docket.  Consequently, ALPS has cited to the relevant portions of the original complaint, Defendants' answer thereto, and ALPS's amended complaint.  (Docs. 1, 12, and 14)

[4]*See also Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 882 (Alaska 2013).

[Leisnoi] succeeds in obtaining and/or retaining by virtue of [the Stratman] litigation,' along with any attorney's fees awarded by the court," in the event Leisnoi were successful in the Stratman Litigation. *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 882 (Alaska 2013). On December 15, 1989, the trial court entered partial final judgment in favor of Stratman and against Leisnoi in the Stratman Litigation (Request for Judicial Notice, Exhibit B); Leisnoi, represented by Ed Merdes, timely appealed. *See Leisnoi, Inc. v. Stratman*, 835 P.2d 1202, 1203, 1207 (Alaska 1992).

Ed Merdes and Ward Merdes incorporated the Merdes Firm on February 22, 1990. (Doc. 1 at ¶ 10; Doc. 12 at ¶ 10; Doc. 14 at ¶ 10) On December 5, 1991, Ed Merdes passed away. (Doc. 1 at ¶ 10; Doc. 12 at ¶ 10; Doc. 14 at ¶ 10)

In a June 26, 1992 opinion, modified on July 24, 1992, the Alaska Supreme Court reversed and remanded the trial court's entry of judgment against Leisnoi in the Stratman Litigation with directions to the trial court to dismiss claims by Stratman and the other consolidated plaintiffs against Leisnoi. *Leisnoi*, 835 P.2d at 1211. On July 20, 1992, the Merdes Firm recorded a Notice of Attorney's Lien, placing a lien on approximately 19,000 acres of property at issue in the Stratman Litigation. (Doc. 1 at ¶ 12; Doc. 12 at ¶ 12; Doc. 14 at ¶ 12) In August 1994, the Alaska Bar Association's Fee Review Committee ("Arbitration Panel") rendered a decision on Leisnoi's challenge to the validity of the contingency fee arrangement for the Stratman Litigation; the Arbitration Panel declined to enforce Leisnoi's obligation to convey a 30% interest in the property and instead awarded $721,000 plus interest, payable in $100,000 yearly installments, and $55,000 in court-awarded attorneys' fees. (Doc. 1 at ¶ 13; Doc. 12 at ¶ 13; Doc. 14 at ¶ 13) On January 25, 1995, the trial court in the Leisnoi Suit confirmed the Arbitration Panel's award of fees and entered judgment in favor of the Merdes Firm against

Leisnoi in the principal amount of $721,000 plus interest at eight percent per annum from July 26, 1992 until paid. (Request for Judicial Notice, Exhibit C) The January 25, 1995 judgment further provided that Leisnoi "may pay this judgment in installments of $100,000 per year" to the Merdes Firm "by September 1 of each year, commencing in 1994." (*Id.*)

From 1995 until April 1, 2002, Leisnoi made payments to the Merdes Firm in accordance with the terms of the January 25, 1995 judgment. *Leisnoi*, 307 P.3d at 883. On September 1, 2002, Leisnoi defaulted on its payment obligations under the January 25, 1995 judgment, and Leisnoi and Ward Merdes attempted to negotiate a settlement regarding the amount of the unpaid judgment. *Id.* at 883-84. In May 2007, the Merdes Firm recorded the January 25, 1995 judgment against Leisnoi in the Kodiak Recording District. *Id.* at 884. On January 27, 2009, the Merdes Firm moved the trial court in the Leisnoi Suit to issue a writ of execution on the unpaid amounts owed by Leisnoi under the January 25, 1995 judgment. (Request for Judicial Notice, Exhibit D)

On March 9, 2009, Leisnoi filed a motion to expunge the Notice of Attorney's Lien filed by the Merdes Firm on July 20, 1992 and the Judgment Lien recorded by the Merdes Firm in May 2007. (Request for Judicial Notice, Exhibit E) On May 19, 2009, Leisnoi filed a motion to vacate or amend the January 25, 1995 judgment. (Request for Judicial Notice, Exhibit F) In its supporting memorandum, Leisnoi argued "Merdes should be required to reimburse Leisnoi, Inc., for all amounts paid under the judgment (including the attorney fees paid to Ward Merdes) together with interest at the current pre-judgment interest rate, and a judgment should immediately issue therefore [sic]." (Request for Judicial Notice, Exhibit G, 4:11-14) On January 13, 2010, the trial court entered an order (1) granting the Merdes Firm's motion for a writ of execution, (2) denying Leisnoi's motion to vacate or amend the January 25, 1995

judgment, and (3) granting Leisnoi's motion to expunge the Notice of Attorney's Lien filed on July 20, 1992 and the Judgment Lien recorded in May 2007. (Request for Judicial Notice, Exhibit H)

The trial court denied Leisnoi's motion for reconsideration and clarification on January 25, 2010. (Request for Judicial Notice, Exhibit I) On February 22, 2010, Leisnoi filed its notice of appeal from the trial court's January 25, 2010 final order. (Request for Judicial Notice, Exhibit J) In July 2010, Leisnoi paid the remaining balance owed under the January 25, 1995 judgment. (Request for Judicial Notice, Exhibit K)

On March 23, 2011, Leisnoi filed its reply brief in the appeal pending before the Alaska Supreme Court, asserting its entitlement "to claim restitution of the monies paid Merdes following issuance of the execution." (Appellant's Reply Brief, Alaska Supreme Court No. S-13790, 2011 WL 2214592, at \*20 (Mar. 23, 2011)) Leisnoi further characterized its position as "rather simple," "[i]f relief is granted and the judgment is vacated pursuant to Rule 60(b), the matter would be remanded back for proceedings consistent with the decision of this Court, *including a determination by the trial court of restitution due Leisnoi*." *Id*. at \*19 (emphasis added).

On January 17, 2013, Ward Merdes incorporated the Merdes Law Office. (Doc. 1 at ¶ 26; Doc. 12 at ¶ 26; Doc. 14 at ¶ 26) On February 1, 2013, the Alaska Supreme Court issued its opinion reversing the trial court's order granting the Merdes Firm's motion for a writ of execution and holding the contingent fee arrangement, the Arbitration Panel's August 1994 award, the January 25, 1995 judgment, and the 2009 writ of execution violated the Alaska Native Claims Settlement Act, 43 U.S.C. § 1621(a). *Leisnoi*, 307 P.3d at 894. In its February 1, 2013

opinion, the Alaska Supreme Court also held Leisnoi is entitled to recover from the Merdes Firm the $643,760 payment made in July 2010, with interest. *Id.*

**B.     Underlying Suit**

In a letter to Ward Merdes dated February 13, 2013, Leisnoi reiterated its prior demands that the Merdes Firm return the $643,760 paid by Leisnoi on July 28, 2010, plus accrued interest as of February 11, 2013, for a total of $815,616.86.  (Mickelson Affidavit,[5] Exhibit 1)  The February 13, 2013 letter specifically referenced Alaska Bar Rules and Rules of Professional Responsibility requiring "the prompt return of client monies and property."  (*Id.* at page 1)  On May 20, 2013, Leisnoi filed the Underlying Suit against Defendants, asserting four causes of action for breach of contract, fraudulent conveyance, conspiracy to fraudulently convey assets, and punitive damages.  (Doc. 1 at ¶ 30; Doc. 12 at ¶ 30; Doc. 14 at ¶ 30; Doc. 14-1)  On August 19, 2013, Leisnoi filed a First Amended Complaint against Defendants, asserting five causes of action for breach of contract, fraudulent conveyance, conspiracy to fraudulently convey assets, unfair trade practices, and punitive damages.  (Doc. 14-2)  In the Underlying Suit, Leisnoi alleges "Defendants engaged in self-dealing and fraud by transferring all of the value and goodwill of the Merdes Firm to" the Merdes Law Office and Ward Merdes "without receiving reasonably equivalent value, in order to avoid returning the money to Leisnoi."  (Doc. 14-2 at ¶ 13)  Leisnoi seeks an order voiding the transfers of property made by the Merdes Firm, compensatory damages, treble damages, punitive damages, a writ of attachment or provisional remedies against the assets transferred, an injunction against further disposition of assets, attorneys' fees, and costs.  (*Id.* at Prayer for Relief)

---

[5]This affidavit is attached hereto as Exhibit L.

### C.     Policies

The Policies provide legal professional liability insurance on a claims made and reported basis.   (Doc. 14-3 at page 3, Insuring Agreements § 1.1; Doc. 14-4 at page 3, Insuring Agreements § 1.1[6])  Both Policies require that "the Insured must immediately report any claim to ALPS during the policy period" and specifically exclude coverage "for a claim which is first made against the Insured" before the policy period.  (Doc. 14-3 at page 2; Doc. 14-4 at page 2) "Policy Period" is defined in both Policies as "the period of time between the effective date listed in Item 3 of the Declarations and . . . the expiration date listed in Item 3 of the Declarations." (Doc. 14-3 at page 7, Definitions § 2.20; Doc. 14-4 at page 7, Definitions § 2.21)  The Policy Period for the Merdes Firm Policy is July 18, 2012 to July 18, 2013, and the Policy Period for the Merdes Law Office Policy is April 1, 2013 to April 1, 2014.  (Doc. 14-3 at page 1; Doc. 14-4 at page 1)

The Merdes Firm Policy's insuring agreement states in relevant part:

> Subject to the limit of liability, exclusions, conditions and other terms of this policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the deductible amount) that the Insured becomes legally obligated to pay as damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that the claim arises from an act, error, omission or personal injury that happened on or after the loss inclusion date and the retroactive coverage date set forth in Items 2 and 3 of the Declarations, and that the claim arises from or is in connection with:

> 1.1.1    an act, error or omission in professional services that were or should have been rendered by the Insured, or

> 1.1.2    a personal injury arising out of the professional services of the Insured,

---

[6]Defendants have admitted that true and correct copies of the Policies are attached to ALPS's pleadings.  (Doc. 12 at ¶¶ 33-34)

and further provided that at the effective date of this policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or personal injury might be the basis of a claim.

(Doc. 14-3 at page 3, Insuring Agreements § 1.1-1.1.2) The Merdes Law Office Policy's insuring agreement similarly states in relevant part:

> Subject to the limit of liability, exclusions, conditions and other terms of this policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the deductible amount) that the Insured becomes legally obligated to pay as damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that:

> 1.1.1 the claim arises from an act, error, omission or personal injury that happened on or after the loss inclusion date and the retroactive coverage date set forth in Items 2 and 3 of the Declarations, and that the claim arises from or in connection with:

>> 1.1.1.1 an act, error or omission in professional services that were or should have been rendered by the Insured, or

>> 1.1.1.2 a personal injury arising out of the professional services of the Insured;

> 1.1.2 at the effective date of this policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or personal injury might be the basis of a claim[.]

(Doc. 14-4 at page 3, Insuring Agreements § 1.1-1.1.2)

"Claim" is defined in the Policies as "a demand for money or services, including but not limited to the service of suit or institution of arbitration proceedings against the Insured."

(Doc. 14-3 at page 5, Definitions § 2.3; Doc. 14-4 at page 5, Definitions § 2.3) "Damages" is defined in the Policies as "any monetary award by way of judgment or final arbitration, or any settlement"; however, the definition of "damages" in the Policies specifically does not include "punitive, multiple, or exemplary damages," "injunctive, declaratory, or other equitable relief, or costs or fees incident thereto," and "restitution, reduction, disgorgement or set-off of any fees,

costs, consideration or expenses paid to or charged by an Insured, or any other funds or property presently or formerly held by an Insured." (Doc. 14-3 at pages 5-6, Definitions § 2.6; Doc. 14-4 at pages 5-6, Definitions § 2.6)

The Policies exclude coverage for any claim "arising from or in connection with . . . [a]ny act, error, omission or personal injury that occurred prior to the effective date of th[e] policy, if . . . [p]rior to the effective date of the policy, any Insured gave or should have given, to any insurer, notice of a claim or potential claim arising from the act, error, omission, or personal injury, or from any act, error, omission, or personal injury in related professional services." (Doc. 14-3 at pages 8-9, Exclusions § 3.1.5.3; Doc. 14-4 at page 9, Exclusions § 3.1.5.3) The Policies also exclude coverage for any claim arising from or in connection with "[a]ny dispute over fees or costs, or any claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held by an Insured." (Doc. 14-3 at page 9, Exclusions § 3.1.15; Doc. 14-4 at page 9, Exclusions § 3.1.15)

The Policies further provide that:

> In the event an Insured fails to give written notice to the Company of a claim, prior to the end of the policy period in which the claim is made, or in the event an Insured fails to give written notice to the Company of a potential claim, as described in Section 4.6.1, prior to the end of the policy period in which the Insured first becomes aware of the act, error, omission, or personal injury, then no coverage for any such claim shall be afforded to the Insured under any future policy issued by the Company.

(Doc. 14-3 at page 13, Conditions § 4.6.4; Doc. 14-4 at page 13, Conditions § 4.6.4) In addition, the Merdes Law Office Policy includes a Special Endorsement, which excludes coverage "for any claim or potential claim arising from or in connection with any act, error, or omission in professional services rendered or that should have been rendered by the Insured in regard to the

Insured's relationship with or work performed for or on behalf of [the Merdes Firm]." (Doc. 14-4 at page 17)

On February 13, 2013, Ward Merdes notified ALPS of Leisnoi's February 13, 2013 demand letter and the Alaska Supreme Court's February 1, 2013 opinion. (Mickelson Affidavit, Exhibit 2) In a letter dated February 21, 2013, ALPS denied coverage for Leisnoi's February 13, 2013 demand letter under the Merdes Firm Policy. (Doc. 1 at ¶ 45; Doc. 12 at ¶ 45; Doc. 14 at ¶ 46) On June 18, 2013, Ward Merdes notified ALPS that Leisnoi had filed the Underlying Suit. (Doc. 1 at ¶ 46; Doc. 12 at ¶ 46; Doc. 14 at ¶ 47) In a letter dated July 11, 2013, ALPS denied coverage for the Underlying Suit for Defendants under both Policies. (Doc. 1 at ¶ 47; Doc. 12 at ¶ 47; Doc. 14 at ¶ 48)

III.    **SUMMARY JUDGMENT STANDARD**

Pursuant to Rule 56(a), a district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Facts are material if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Rule 56(c)(1)(A). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

*ALPS Property & Casualty Insurance Co. v. Merdes &*        Motion for Summary Judgment
*Merdes, P.C.*, Case No. 4:14-cv-00002-SLG                              Page 11

Case 4:14-cv-00002-SLG   Document 35   Filed 04/15/14   Page 11 of 22

## IV.    ARGUMENT

### A.    The Underlying Suit Is Not Covered by the Policies and Never Presented Any Possibility of Coverage Because the Underlying Suit Is Not a Claim First Made During the Policies' Respective Policy Periods.

Under Alaska law,[7] an insurer's duty to defend arises "if the complaint on its face alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy." *CHI of Alaska, Inc. v. Emp'rs Reinsurance Corp.*, 844 P.2d 1113, 1115 n.5 (Alaska 1993). *See also Afcan v. Mut. Fire, Marine & Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979) (duty to defend arises "[w]henever a complaint states a cause of action within, or potentially within, the policy coverage"). "The potential for coverage may be shown either on the face of the complaint or through facts the insurer knew or could have reasonably ascertained that would bring an otherwise uncovered complaint within the policy's coverage." *Makarka v. Great Am. Ins. Co.*, 14 P.3d 964, 969 (Alaska 2000). An insurer's duty to defend, however, "does not arise whenever an insurer and an insured have a dispute over coverage." *Id.* Moreover, when "coverage turns solely on the interpretation of policy language that has never been reviewed by [the Alaska Supreme Court], that fact alone is not enough to create a possibility of coverage that require[s] a defense." *Id.* at 970.

"The construction of an insurance contract is a matter for the court, unless its interpretation is dependent upon the resolution of controverted facts." *O'Neill Investigations, Inc. v. Ill. Emp'rs Ins. of Wausau*, 636 P.2d 1170, 1173 (Alaska 1981). In construing an insurance contract to determine whether a potential for coverage exists, a court examines the

---

[7]A federal court exercising diversity jurisdiction construes an insurance contract in accordance with state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *HS Servs., Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 644 (9th Cir. 1997). In this case, Alaska law applies. *See Ness v. Nat'l Indem. Co. of Neb.*, 247 F. Supp. 944, 947 (D. Alaska 1965) (Alaska law applies to policy issued to insured in Alaska).

policy as a whole, relevant extrinsic evidence, and case law analyzing similar policy provisions. *Makarka*, 14 P.3d at 966. *See also* Alaska Stat. § 21.42.230 ("Each insurance contract shall be construed according to the entirety of its terms and conditions as set out in the policy."). If "the terms of the policy are clear and unambiguous," Alaska courts, "of course, give effect to the language." *Werley v. United Servs. Auto. Ass'n*, 498 P.2d 112, 116 (Alaska 1972).

While an insured's "objectively reasonable expectations . . . regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations," *State v. Underwriters at Lloyds, London*, 755 P.2d 396, 400 (Alaska 1988) (quotation omitted), "[t]his flexible approach . . . is not to be used as an instrument for ignoring or rewriting insurance contracts." *Farquhar v. Alaska Nat'l Ins. Co.*, 20 P.3d 577, 579 (Alaska 2001) (internal quotation omitted). When a "reasonable interpretation favors the insurer, and any other would be strained and tenuous, no compulsion exists to torture or twist the language of the contract." *Dugan v. Atlanta Cas. Cos.*, 113 P.3d 652, 655 (Alaska 2005) (quoting *Ness*, 247 F. Supp. at 947).

Here, ALPS has no duty to defend or indemnify Defendants because the Underlying Suit is not a claim first made and reported during either of the Policies' respective policy periods. The Merdes Firm Policy limits coverage to claims first made against an Insured and reported to ALPS during the July 18, 2012 to July 18, 2013 policy period. (Doc. 14-3 at pages 1 and 3, Insuring Agreements § 1.1) The Merdes Law Office Policy similarly limits coverage to claims first made against an Insured and reported to ALPS during the April 1, 2013 to April 1, 2014 policy period. (Doc. 14-4 at pages 1 and 3, Insuring Agreements § 1.1) Both Policies define "claim" as "a demand for money or services, including but not limited to the service of suit or

institution of arbitration proceedings against the Insured."  (Doc. 14-3 at page 5, Definitions § 2.3; Doc. 14-4 at page 5, Definitions § 2.3)

Although the Alaska Supreme Court has not specifically analyzed claims-made insuring provisions, courts in other jurisdictions have held such provisions are unambiguous, valid, and enforceable.  *See, e.g.*, *Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 342 (7th Cir. 2013) (claims made policy unambiguously limits coverage for claims made during policy period); *Westport Ins. Corp. v. Markham Grp. Inc. PS*, 403 F. App'x 264, 266 (9th Cir. 2010) (claims made and reported policy requires that claim be first made and reported during same policy period); *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 809 n.3 (10th Cir. 2009) (under claims-made policy, "coverage is effective if a [covered] act is discovered and brought to the attention of the insurance company during the period of the policy, no matter when the act occurred"); *Heydar v. Westport Ins. Corp.*, 158 F. App'x 774, 775 (9th Cir. 2005) (no coverage for claim made during 2000-2001 policy period and reported during 2001-2002 policy period).  Thus, a "claim" as defined by the Policies was first made when Leisnoi first demanded money from Defendants.  *Cf. Catlin Specialty Ins. Co. v. CAMICO Mut. Ins. Co.*, 896 F. Supp.2d 808, 818 (N.D. Cal. 2012) ("claim" includes letter demanding money from insured).

Leisnoi first demanded "restitution of the monies paid Merdes following issuance of the execution" in and not later than its reply brief filed with the Alaska Supreme Court on March 23, 2011, more than one year before the July 18, 2012 effective date of the Merdes Firm Policy and more than two years before the April 1, 2013 effective date of the Merdes Law Office Policy.  *See* Appellant's Reply Brief, 2011 WL 2214592, at *20.  The Underlying Suit as well as Leisnoi's February 13, 2013 demand letter reiterated Leisnoi's demand that Defendants return

the monies paid after the writ of execution. Thus, the Underlying Suit is a claim first made in 2011 (or earlier) and not during the Policy Period of the Merdes Firm Policy or the Merdes Law Office Policy.[8] Because the Underlying Suit is a claim first made before the Policies' respective policy periods, no coverage exists for the Underlying Suit under the Merdes Firm Policy or the Merdes Law Office Policy.

**B.    Even If the Underlying Suit Were a Claim First Made During Either of the Policies' Respective Policy Periods, the Underlying Suit Would Still Not Be Covered.**

The Underlying Suit is also not covered due to Ward Merdes' knowledge prior to the effective dates of the Policies and because the Underlying Suit does not arise from an act, error, omission, or personal injury that occurred after the Policies' respective loss inclusion and retroactive dates. Coverage for the Underlying Suit is further precluded under both Policies by the definition of "damages," Exclusion 3.1.15 ("Return of Fees or Other Funds Exclusion"), and Exclusion 3.1.5.3.

**1.    Ward Merdes' Knowledge Prior to the Effective Dates of the Policies Precludes Coverage.**

The Policies' insuring agreements require "that at the effective date of this Policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or personal injury might be the basis of a claim." (Doc. 14-3 at page 3, Insuring Agreements § 1.1; Doc. 14-3 at page 3, Insuring Agreements § 1.1.2) The Policies also exclude coverage for any claim arising from or in connection with any act, error, or omission that occurred prior to the effective date if "prior to the effective date of the policy, any Insured gave or should have given,

---

[8]The Underlying Suit is not covered under the Merdes Law Office Policy for the additional reason that the Underlying Suit is a claim arising from or in connection with alleged acts, errors, or omissions in regard to work performed for or on behalf of the Merdes Firm. (Doc. 14-4 at page 17)

to any insurer, notice of a claim or potential claim arising from the act, error, [or] omission."
(Doc. 14-3 at pages 8-9, Exclusions § 3.1.5.3; Doc. 14-4 at page 9, Exclusions § 3.1.5.3)
Because the Policies do not afford coverage when an Insured "knew or reasonably should have
known or foreseen that the act, error, [or] omission . . . might be the basis of a claim" and "gave
or should have given" notice, the test to be applied is an objective one based on the facts known
by Ward Merdes prior to July 18, 2012 with respect to coverage under the Merdes Firm Policy
and April 1, 2013 with respect to coverage under the Merdes Law Office Policy. *See Markham*,
403 F. App'x at 265 (applying "any reasonable insured" standard and determining insured's prior
knowledge that "client's case had been dismissed and could not be refiled" precluded coverage);
*Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 237 (3d Cir. 2006) (concluding
coverage turns on insured's actual knowledge and objective consideration of "whether a
reasonable professional in the insured's position might expect a claim or suit to result").

Here, the Underlying Suit arises out of an arbitration award and confirmation of judgment
dating back to 1994.  (Request for Judicial Notice, Exhibit C)  On January 27, 2009, after years
of discussion and negotiation between Ward Merdes and Leisnoi, the Merdes Firm requested a
writ of execution for the unpaid amounts under the January 25, 1995 judgment.  (Request for
Judicial Notice, Exhibit D)  Leisnoi responded by moving to expunge the Merdes Firm's Notice
of Attorney's Lien and Judgment Lien and to vacate or amend the January 25, 1995 judgment.
(Request for Judicial Notice, Exhibits E and F)

Thus, Ward Merdes knew no later than May 2009, when Leisnoi moved to vacate or
amend the January 25, 1995 judgment, that Leisnoi contended the Merdes Firm should be
required to reimburse Leisnoi "for all amounts paid under the judgment."  (Request for Judicial
Notice, Exhibit G at 4:11-14)  Ward Merdes also knew no later than March 2011 that Leisnoi

asserted its entitlement to restitution of monies paid after the writ of execution. *See* Appellant's Reply Brief, 2011 WL 2214592, at *20. Ward Merdes, however, did not notify ALPS of Leisnoi's assertions and demands until February 13, 2013. (Mickelson Affidavit, Exhibit 2) Consequently, the Policies do not afford coverage for the Underlying Suit in light of Ward Merdes' knowledge of Leisnoi's assertions and demands for reimbursement and restitution prior to the Policies' respective effective dates.

> **2.      The Underlying Suit Does Not Arise From an Act, Error, Omission, or Personal Injury That Occurred on or After the Policies' Respective Loss Inclusion and Retroactive Dates.**

Both the Merdes Firm Policy and the Merdes Law Office Policy limit coverage to claims "aris[ing] from an act, error, omission or personal injury that happened on or after the loss inclusion date and the retroactive coverage date set forth in Items 2 and 3 of the Declarations." (Doc. 14-3 at page 3, Insuring Agreements § 1.1; Doc. 14-4 at page 3, Insuring Agreements § 1.1.1) The Merdes Firm Policy's loss inclusion date is July 18, 1989, and the retroactive date is January 1, 1990. (Doc. 14-3 at page 1) The Merdes Law Office Policy's loss inclusion and retroactive dates are both April 1, 2013. (Doc. 14-4 at page 1)

Courts have consistently held professional liability policies do not afford coverage for claims arising from acts, errors, or omissions prior to the retroactive date, even if the alleged injury or damage continues after the retroactive date. *See, e.g.*, *Ferguson v. Gen. Star Indem. Co.*, 582 F. Supp.2d 91, 99-101 (D. Mass. 2008) (tax penalties and interest that accrued after retroactive date did not create coverage for tax errors that occurred prior to retroactive date); *Medmarc Cas. Ins. Co. v. Craytor*, No. 5:06CV95, 2007 WL 1585142, at *12 (E.D. Tex. Apr. 30, 2007), *report and recommendation adopted*, 2007 WL 1481045 (E.D. Tex. May 21, 2007) (no coverage for claim that insured law firm failed to timely file return of summons prior

to retroactive date); *Evans v. Med. Inter-Ins. Exch.*, 856 A.2d 609, 615 (D.C. 2004) (medical malpractice policy did not afford coverage for post-retroactive date "injuries arising out of" pre-retroactive date events). In *Ferguson*, the court rejected the argument that the penalties and interest that accrued after the retroactive date as a result of conduct before the retroactive date were part of a "continuing scheme" of conduct by the insured attorney after the retroactive date. 582 F. Supp.2d at 100 ("The fact that Attorney Dean did not mitigate his damages arising out of his 1994 malpractice did not convert his 1994 malpractice into an event which occurred during the policy period."). Similarly, the mere continuation of the attorney-client relationship after the retroactive date does not create coverage for conduct before the retroactive date. *See Coregis Ins. Co. v. Blancato*, 75 F. Supp.2d 319, 321 (S.D.N.Y. 1999) ("bare allegation" that insured "continued acts of malpractice" after retroactive date insufficient to trigger duty to defend).

The Underlying Suit arises entirely from a contingent fee agreement entered into in January 1988 by which the Merdes Firm and Merdes were paid money by Leisnoi and which Leisnoi contended violated 43 U.S.C. § 1621(a). *See Leisnoi*, 307 P.3d at 887. The Alaska Supreme Court agreed with Leisnoi. *Id.* ("[I]t is clear that the original agreement between Merdes and Leisnoi violated the statute: It was based on a percentage fee of the value of Leisnoi's ANCSA lands.").

The contingent fee agreement, which is the basis of a nearly two decade long dispute between the Merdes Firm/Ward Merdes and Leisnoi, was entered into more than one year before the Merdes Firm Policy's July 18, 1989 loss inclusion date and two years before the Merdes Firm Policy's January 1, 1990 retroactive date. Under the plain language of the Policies, the alleged acts, errors, and omissions related to the execution of the contingent fee agreement in January 1988 occurred before the Merdes Firm Policy's July 18, 1989 loss inclusion date, the

Merdes Firm Policy's January 1, 1990 retroactive date, and the Merdes Law Office Policy's April 1, 2013 loss inclusion and retroactive dates. Therefore, the Underlying Suit is outside the coverage afforded by the Policies.

### 3. The Underlying Suit Does Not Seek "Damages."

The Underlying Suit must seek "damages" as defined by the Policies to be potentially covered. (Doc. 14-3 at page 3, Insuring Agreements § 1.1; Doc. 14-4 at page 3, Insuring Agreements § 1.1) Under both Policies, "damages" is defined as "any monetary award by way of judgment or final arbitration, or any settlement"; however, "damages" does not include restitution of any fees, costs, consideration, or expenses paid to an Insured. (Doc. 14-3 at pages 5-6, Definitions § 2.6; Doc. 14-4 at pages 5-6, Definitions § 2.6) "Damages" also does not include restitution of any other funds presently or formerly held by an Insured. (Doc. 14-3 at page 6, Definitions § 2.6.4; Doc. 14-4 at page 6, Definitions § 2.6.4)

The plain, unambiguous definition of "damages" excludes the restitution of fees, costs, consideration, or expenses paid to an Insured and funds presently or formerly held by an Insured, regardless of the theory of liability alleged or the characterization of the remedy sought in the Underlying Suit. *See, e.g.*, *Cont'l Cas. Co. v. Donald T. Bertucci, Ltd*., 926 N.E.2d 833, 839-40 (Ill. App. 2010) (former client's lawsuit against insured attorney seeking restitution of fees did not seek "damages" because definition of damages specifically excluded the recovery sought). For example, in *Bank of the West v. Superior Court*, 833 P.2d 545, 548, 553 (Cal. 1992), the California Supreme Court held the underlying lawsuit did not seek "damages" because "one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired." *See also CNL Hotels & Resorts, Inc. v. Houston Cas. Co*., 505 F. Supp.2d 1317, 1322-24 (M.D. Fla. 2007) (insured's return of money to which it was not entitled not covered);

*SnyderGeneral Corp. v. Century Indem. Co.*, 907 F. Supp. 991, 1005 (N.D. Tex. 1995), *rev'd in part on other grounds*, 113 F.3d 536 (5th Cir. 1997) ("restitution or reimbursement" not "damages").

The insured's intent or negligence in receiving or holding funds or property is irrelevant to whether a claim seeks "damages" or "loss." *See, e.g.*, *Rep. W. Ins. Co. v. Spierer, Woodward, Willens, Denis & Furstman*, 68 F.3d 347, 351 (9th Cir. 1995) (retainer accepted by law firm, which firm later had to return because of a conflict of interest, not "damages"); *Tana v. Prof'ls Prototype I Ins. Co.*, 47 Cal. App.4th 1612, 1619 (1996) (concluding "as a matter of law, no relief sought by [plaintiff] fell within the definition of 'Damages'" and "there was no possibility of coverage and therefore no duty to defend"). The fact that the money sought to be returned was lawfully received by an insured does not transform the returned money into covered "damages." *Rep. W. Ins. Co.*, 68 F.3d at 351-52. Moreover, under Alaska law an insured's restoration of monies acquired by the insured is not "damages" even when the money "was not wrongfully withheld." *See O'Neill Investigations*, 636 P.2d at 1175 (attorney general action for injunctive relief, civil penalties, and restoration of monies sought "restoration to individuals of monies or property acquired by the" insured and, therefore, did "not constitute a claim for damages").

Likewise here, the amounts sought by Leisnoi in the Underlying Suit are not "damages" because Leisnoi seeks recovery of amounts paid to the Merdes Firm and funds presently or formerly held by an Insured. The manner in which Defendants received the funds at issue and Leisnoi's theories of liability in the Underlying Suit are irrelevant to whether the amounts sought are "damages" and potentially within the Policies' coverage. Because the Underlying Suit does not seek "damages," the Underlying Suit is not even potentially covered under the Policies.

### 4. The Return of Fees or Other Funds Exclusion Applies and Precludes Coverage for the Underlying Suit.

Return of Fees or Other Funds Exclusion in the Policies excludes coverage for claims that seek, whether directly or indirectly, the return or reimbursement of fees, costs, or other funds held by an Insured. (Doc. 14-3 at page 9, Exclusions § 3.1.15; Doc. 14-4 at page 9, Exclusions § 3.1.15) Courts construing the same or similar exclusions have held the focus of such exclusions "is clearly on the relief requested" and not on "the actual theory of recovery." *Cont'l Cas. Co. v. Brady*, 907 P.2d 807, 810 (Idaho 1995). When an underlying lawsuit only seeks relief within such an exclusion, as here, the insurer has no duty to defend because the lawsuit is not even potentially covered. *Id.* at 811 ("In short, with the exception of the claim for punitive damages, the Duvalls' complaint simply does not support a claim for any damages unrelated to a return of fees. For this reason, the allegations in the complaint, even if true, do not raise a potential for a covered claim. Therefore, CNA did not have a duty to defend Brady."). Allegations of professional negligence and breach of fiduciary duty are not potentially covered if they seek recovery of the very relief subject to the exclusion. *Norman Shabel, P.C. v. Nat'l Union Fire Ins. Co.*, 923 F. Supp. 681, 683-84 (D.N.J. 1996) (insurer had no duty to defend complaints alleging legal malpractice because the only amounts sought were fees paid to insured).

Here, the Return of Fees or Other Funds Exclusion in both Policies applies to claims seeking, directly or indirectly, the return of other funds held by an Insured. The relief sought by Leisnoi in the Underlying Suit consists solely of funds paid to or otherwise held by Defendants. Under the clear and unambiguous language of the Return of Fees or Other Funds Exclusion, the Underlying Suit is not covered under the Merdes Firm Policy or the Merdes Law Office Policy.

## V. CONCLUSION

For the reasons discussed above, ALPS's motion for summary judgment should be granted in its entirety and judgment entered in ALPS's favor declaring the Merdes Firm Policy and the Merdes Law Office Policy do not provide coverage for the Underlying Suit.

Dated this 15th day of April, 2014.

Attorneys for Plaintiff ALPS Property & Casualty Insurance Company

By: s/ Angela Probasco
Kevin D. Hartzell (pro hac vice)
Angela Probasco (pro hac vice)
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE 68102
(402) 346-6000 *telephone*
(402) 346-1148 *facsimile*
Kevin.Hartzell@kutakrock.com
Angela.Probasco@kutakrock.com

and

Clay A. Young
Kendra E. Bowman
DELANEY WILES, INC.
Alaska Bar No. 7410117
1007 W. 3rd Ave., Ste. 400
Anchorage, AK 99501
907-279-3581 *telephone*
907-277-1331 *facsimile*
cay@delaneywiles.com
keb@delaneywiles.com

Certificate of Service

I hereby certify that on April 15, 2014
a copy of the foregoing was served
electronically on:

Brad S. Kane
Kane Law Firm

s/ Angela Probasco
KUTAK ROCK LLP