Brad Kane, Esq. (ABN: 9111089)
bkane@kanelaw.la
Kane Law Firm
1154 S Crescent Hts. Blvd.
Los Angeles, CA 90035
Tel: (323) 937-3291 / Fax: (323) 571-3579
Attorney For All Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY, f/k/a Attorneys Liability Protection Society, Inc., A Risk Retention Group, | ) ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| MERDES & MERDES, P.C., MERDES LAW OFFICE, P.C., and WARD M. MERDES, | ) ) ) | Case No. 4:14-cv-00002-SLG |
| | ) | |
| Defendants. | ) | |

**MERDES & MERDES, P.C., MERDES LAW OFFICE, P.C., AND WARD M. MERDES' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56 and District of Alaska Local Rules 7.1, 10.1 and 56.1, Defendants Merdes & Merdes, P.C. (the "Merdes Firm "), Merdes Law Office, P.C. ("Merdes Law Office"), and Ward M. Merdes ("Ward Merdes") (collectively the "Merdes Defendants") oppose Plaintiff ALPS Property & Casualty Insurance Company ("ALPS")'s 04/15/14 motion for summary judgment on its declaratory relief claim ("Motion").

ALPS's Motion challenges application of the insuring provision on the ground that the underlying lawsuit filed by Leisnoi, Inc. ("Leisnoi") on May 20, 2013 is not a claim made within the policy periods under Merdes Firm and Merdes Law Office policies. To make that argument, ALPS conflates: (i) Leisnoi's efforts to vacate the 1995 Judgment and void the 2010 writ of execution culminating in the Alaska Supreme Court's February 1, 2013 Decision in <u>Leisnoi v. Merdes & Merdes, P.C.</u>; and (ii) Leisnoi's February 13, 2013 letter and the underlying action filed by Leisnoi on May 20, 2013. Even Leisnoi admits that it did not have any claims prior to February 1, 2013. Moreover, Leisnoi never made a "claim" against: (i) Ward Merdes prior to February 13, 2013; or (ii) Merdes Law Office prior to May 20, 2013. Thus, the Merdes Defendants are entitled to coverage.

Next, ALPS asserts essentially (3) exclusions. First, ALPS argues Ward Merdes knew or should have known that the acts alleged might be the basis of "a claim" prior to the effective dates of the policies. However, since Leisnoi's claims are false and frivolous, Ward Merdes had no way of anticipating most, if not all, of the claims asserted in Leisnoi's May 20, 2013 claim prior to the policies' effective dates.

Second, ALPS next argues Leisnoi's claims do not "arise" on or after the policies' loss inclusion and retroactive dates. To make that argument, ALPS makes two errors: (i) it construes the "arising from" language in the exclusion broadly, instead of narrowly; and (ii) it fails to address the discrete improper acts alleged by Leisnoi between 2010 and 2013, including allegedly improper file transfers between the Merdes Firm and the Merdes Law Office after the loss inclusion and retroactive dates.

Finally, although ALPS attempts to separately rely upon the Fee Dispute Exclusion and the definition of "damages," the analysis is the same. Here, Leisnoi

cannot have a fee dispute with Ward Merdes or the Merdes Law Office as Leisnoi never

had an obligation to pay either of them money, and did not do so. Further, Leisnoi seeks

"damages" from each of the Merdes Defendants beyond simple restitution of fees paid

to the Merdes Firm by Leisnoi. Finally, those provisions are ambiguous and must be

interpreted in favor of the insureds.

## II.    FACTUAL BACKGROUND

In 1988, Leisnoi retained Ed Merdes to protect Leisnoi's interest in $95 million

dollars (17,000+ acres) of undeveloped Kodiak Island native land from claims asserted

by Omar Stratman. (Doc. 1,[1] ¶¶ 7-8; Doc. 12, ¶¶ 7-8; Doc. 14, ¶¶ 7-8.) (Merdes Affi. ¶

5.) The case was decided in favor of Leisnoi in Leisnoi v. Stratman, 835 P.2d 1202

(1992). (Merdes Affi. ¶¶ 3, 5.)

Since 1992, Ed Merdes and/or the Merdes Firm prevailed in 1994 State Bar fee

arbitration, 1995 Confirmation proceedings which Leisnoi never appealed, and a CR 60

fight in 2010 regarding a Writ of Execution. In other words, three (3) Arbitrators and two

(2) Superior Court Judges had agreed with the Merdes Firm. (Merdes Affi. ¶¶ 4-7.)

Ed Merdes' estate assigned the benefit of this fee to the Merdes Firm. Leisnoi never

made any payments directly to Ward Merdes or the Merdes Law Office. (Merdes Affi. ¶

8.)

On October 17, 2012, Ward Merdes first petitioned the State of Alaska to create

Merdes Law Office. [Merdes Decl. ¶ 13][2] On January 17, 2013, Merdes Law Office was

incorporated. (Doc .1 at ¶ 26; Doc. 12 at ¶ 26; Doc. 14 at ¶ 26.)

---

[1]     "Doc. __" refers to the filing numbers in Case No. 4:14-cv-00002-SLG.
[2]     Starting in 2008 or 2009 Ward Merdes' nephew, Greg Merdes, expressed an
        interest in going to law school. Ward Merdes also had another Law Clerk named

On February 1, 2013, the Alaska Supreme Court held:

> The 1995 entry of judgment was voidable, not void, and Leisnoi was not entitled to relief under Civil Rule 60(b)(4), 60(b)(5), or 60(b)(6). <u>Leisnoi is entitled to recover the balance that it paid after the writ of execution [$643,760] was unlawfully issued, but</u> it is not entitled to recover payments made prior to the issuance of the writ of execution [or approximately $800,000] The amount to be repaid should include interest. <u>Merdes may seek to recover any fees it believes are owed under a theory of quantum meruit.</u>

Leisnoi, Inc. v. Merdes & Merdes, P.C., 307 P.3d 879, 894 (Alaska 2013) (underline emphasis added).

On February 13, 2013, Leisnoi demanded from the Merdes Firm "return of the monies paid by Leisnoi, Inc. to [the Merdes Firm] on July 28, 2010" pursuant to the 2010 writ of execution. (Doc. 35-2 at p. 1.) The same day, the Merdes Firm forwarded Leisnoi's February 13, 2013 letter to ALPS, reporting Leisnoi's new claim against Ward Merdes and the Merdes Firm for failure to safeguard Leisnoi's property during Leisnoi's efforts and its assertion that Ward Merdes and the Merdes Firm breached the Alaska Rules of Professional Conduct ("ARPC"), specifically Rule 1.15. (Doc. 35-3.) Notably, Leisnoi's February 13, 2013 letter did not demand payment from the newly formed Merdes Law Office.

In the underlying action, filed May 20, 2013, Leisnoi alleges the Merdes Firm, Ward Merdes and Merdes Law Office engaged in: (i) fraudulent conveyances; (ii) conspiracy to commit fraudulent conveyances; and (iii) unfair trade practices. Leisnoi alleges the Merdes Firm, Ward Merdes, and Merdes Law Office engaged in a series of

---

Chris Holm. The three of them began discussing starting a new law firm, like Ed Merdes had done for Ward Merdes, after Greg Merdes and Chris Holm graduated from law school. After Greg Merdes sold his airplane to pay for law school and successfully completed his second year of law school, Ward Merdes decided it was time to move forward with the new firm. (Merdes Affi. ¶¶ 9, 14.)

fraudulent transactions, specifically, the Merdes Firm transferred clients and goodwill to the Merdes Law Office.  (Doc. 14-1; Doc. 14-2.)

On June 18, 2013, the Merdes Defendants wrote ALPS:

Your February 21, 2013 denial letter only addressed coverage relating to [the Merdes Firm].  Please note that Lesnoi, Inc. ("Lesnoi") [sic] has now also asserted claims against two (2) additional defendants, [Merdes Law Office] and [Ward Merdes], who are also insureds or additional insured under the ALPS's policies.  As a result, all three (3) of my clients are tendering defense and indemnity for the above referenced lawsuit.  For your convenience, a copy of the Complaint filed on May 20, 2013 is attached as Exhibit 1.

(Kane Affi. ¶ 3, Ex. 5 at 1.)

ALPS denied coverage and filed this declaratory relief action.

## III.  ALPS HAS A DUTY TO DEFEND THE MERDES FIRM, WARD MERDES AND MERDES LAW OFFICE.

The insurer's duty to defend is broader than its duty to provide coverage. <u>Smith v. Great American Ins. Co.</u>, 629 P.2d 543, 545-46 (Alaska 1981). The insurer may therefore be obligated to defend even where it has no ultimate liability under the policy. <u>Afcan v. Mutual Fire, Marine and Inland Ins. Co.</u>, 595 P.2d 638, 645 (Alaska 1979).

An insurer is obligated to provide a defense whenever the allegations in the complaint state facts which create an action within, or potentially within, the ambit of protection promised the policyholder. <u>Id.</u> Even if a complaint does not contain such allegations, the insurer has a duty to defend if facts underlying the complaint are within, or potentially within, the policy coverage and are known or reasonably ascertainable by the insurer. <u>Id.</u> Further, an insurance policy may be considered a contract of adhesion and as such should be construed so as to provide the coverage which a layman would reasonably have expected, given his lay interpretation of the policy language. We

therefore resolve ambiguities in the meaning of insurance contracts against the insurer. Fejes v. Alaska Ins. Co., 984 P.2d 519, 522 (Alaska 1999).

The burden is on the insurer to prove a claim is specifically excluded. Garvey v. State Farm Fire & Cas. Co., 48 Cal.3d 395, 406 (1989). Moreover, exclusionary clauses are interpreted narrowly, whereas clauses identifying coverage are interpreted broadly. Id. Even if the majority of claims are excluded from coverage, the duty to defend is triggered unless the policy unambiguously excludes all coverage. Hardy v. Hartford Ins. Co., 236 F.3d 287, 290 (5th Cir. 2001).

## IV. LEISNOI'S CLAIMS WERE FIRST MADE DURING THE REPORTING PERIODS FOR THE MERDES FIRM AND MERDES LAW OFFICE POLICIES.

The Merdes Firm Policy limits coverage to claims first made against an Insured and reported to ALPS during the July 18, 2012 to July 18, 2013 policy period. (Doc. 14-3 at pp. 1 and 3, § 1.1.) Arguing that untimely claim reporting bars the duty to defend, ALPS conflates: (i) Leisnoi's efforts to vacate the 1995 Judgment and void the 2010 writ of execution culminating in the Alaska Supreme Court's February 1, 2013 Decision in Leisnoi v. Merdes & Merdes, P.C.; and (ii) Leisnoi's February 13, 2013 letter and the underlying action filed by Leisnoi on May 20, 2013.

Leisnoi did not believe it had a claim against any Merdes Defendant until at least February 1, 2013. According to Leisnoi:

> On February 1, 2013, the Alaska Supreme Court issued its decision ordering [the Merdes Firm] to return $643,760, plus interest, to Leisnoi. Before that date, [the Merdes Firm] did not owe Leisnoi this money. Leisnoi therefore did not yet have claims against [the Merdes Firm] or any other Merdes defendant.

(Kane Affi. ¶ 2, Ex. 4 at p.2.)

On February 13, 2013, Leisnoi demanded from the Merdes Firm the "return of the monies paid by Leisnoi, Inc. to [the Merdes Firm] on July 28, 2010" pursuant to the 2010 writ of execution. (Doc. 35-2 at p. 1.) The same day, the Merdes Firm forwarded Leisnoi's February 13, 2013 letter to ALPS, reporting Leisnoi's new claim against Ward Merdes and the Merdes Firm for failure to safeguard Leisnoi's property and its assertion that Ward Merdes and the Merdes Firm breached the Alaska Rules of Professional Conduct ("ARPC"), specifically Rule 1.15. (Doc. 35-3.) ALPS fails to point to any earlier assertion by Leisnoi of any claims against: (i) Ward Merdes personally; or (ii) against the Merdes Firm or Ward Merdes based on violation of the ARPC.

Similarly, Leisnoi's February 13, 2013 letter did not assert a "claim" against the newly formed Merdes Law Office because it did not demand payment from Merdes Law Office. Abifadel v. Cigna Ins. Co., 8 Cal.App.4th 145, 160 (1992) ("A claim is a demand or challenge of something as a right and asserts the liability of the party from whom a service or sum of money is requested."); Catlin Specialty Ins. Co. v. CAMICO Mut. Ins. Co., 896 F.Supp.2d 808, 817-18 (N.D. Cal. 2012) (quoting and relying upon Abifadel). At most, Leisnoi asserted the formation of the Merdes Law Office was evidence of intent by Ward Merdes to deprive Leisnoi of property:

> On January 17, 2013, you established a new professional corporation in which to do business, thus evidencing a clear and conscious interest to deprive Leisnoi of its property rights in the attorney fees paid to your firm which you are now obligated to return.

(Doc. 35-2 at p. 2.)[3]

---

[3]     ALPS relies on Catlin for the general proposition that a "'claim' includes a letter demanding money from an insured." (Doc. 35 at p. 14.) However, since Leisnoi did not demand any payment from Merdes Law Office in the February 13, 2013

On February 21, 2013, ALPS admitted that Leisnoi's claim as to the Merdes Firm "was first reported during the 'policy period' as you gave notice of the dispute to ALPS on February 14, 2013"[.] (Merdes Affi. ¶ 21, Ex. 3.) Significantly, ALPS construed Leisnoi's February 13, 2013 letter as only a *potential* claim against the Merdes Firm. ALPS did not analyze Ward Merdes' rights to a defense or indemnity. Id. Thus, the Merdes Firm and Ward Merdes timely reported Leisnoi's claim.

Similarly, the Merdes Law Office policy limits coverage to claims first made against an Insured and reported to ALPS during the April 1, 2013 to April 1, 2014 policy period. (Doc. 14-4 at pp. 1 and 3, § 1.1.) On May 20, 2013, Leisnoi filed claims: (i) against the Merdes Firm and Ward Merdes for breach of "a duty to safeguard those disputed funds [paid pursuant to the 2010 writ of attachment] under the contractual agreement with Leisnoi and under the Alaska Rules of Professional Conduct" for damages "in excess of $643,760." (Doc. 14-1 at pp. 6, 8, ¶¶ 18-19, 34); and (ii) against the Merdes Firm, Ward Merdes and the Merdes Law Office for fraudulent conveyance and conspiracy to fraudulently convey assets in order to be able to seek from Ward Merdes and Merdes Law Office more than the value of any assets conveyed to them. (Doc. 14-1 at pp. 6-9, ¶¶ 21-37.)

On June 18, 2013, the Merdes Defendants wrote ALPS:

Your February 21, 2013 denial letter only addressed coverage relating to [the Merdes Firm]. Please note that Lesnoi, Inc. ("Losnoi") [sic] has now also asserted claims against two (2) additional defendants, [Merdes Law Office] and [Ward Merdes], who are also insureds or additional insured under the ALPS's policies. As a result, all three (3) of my clients are tendering defense and indemnity for the above referenced lawsuit. For your convenience, a copy of the Complaint filed on May 20, 2013 is attached as Exhibit 1.

letter, it is not a "claim" within the meaning of the ALPS Merdes Law Office Policy.

(Kane Affi. ¶ 3, Ex. 5 at p. 1.)

On August 19, 2013, Leisnoi filed a First Amended Complaint, adding a claim for Unfair Trade Practices against the Merdes Firm, Ward Merdes and the Merdes Law Office. (Doc. 14-2 at pp. 8-9; ¶¶ 38-43.) Thus, the Merdes Firm, Ward Merdes and the Merdes Law Office reported Leisnoi's claims during the applicable policy periods.[4]

## V. WARD MERDES DID NOT KNOW OF AND COULD NOT REASONABLY ANTICIPATE LEISNOI'S FALSE AND FRAUDULENT CLAIMS AS TO: (i) WARD MERDES AND THE MERDES FIRM PRIOR TO FEBRUARY 13, 2013; OR (ii) WARD MERDES AND MERDES LAW OFFICE PRIOR TO SERVICE OF THE MAY 20, 2013 COMPLAINT.

Under the Policies, there is no coverage for claims in which at the effective date of the policy an insured "knew or reasonably should have known or foreseen that the act, error, [or] omission . . . might be the basis of a claim." (Doc.14-3 at p. 3, § 1.2; Doc. 14-4 at p. 3, §1.2.) Similarly, excluded from coverage under the Policies are claims arising from "any act, error, [or] omission . . . that occurred prior to the effective date of this policy if, prior to the effective date of the policy, any Insured gave or should have given . . . notice of [the] claim." (Doc.14-3 at p.9, § 3.1.5.3; Doc. 14-4 at p. 9, §13.1.5.3.)

---

[4]    In footnote 8, ALPS improperly asserts that the underlying action is not covered under the Merdes Law Office Policy because the underlying action is a claim arising from or in connection with alleged acts, errors, or omission in regard to work performed for or on behalf of the Merdes Firm. First, a footnote reference is inadequate to raise the issue on summary judgment. Second, Leisnoi complains about the Merdes Law Office performing professional services for former clients of the Merdes Firm, not work for the Merdes Firm. Third, the definition of "professional services" is liberally construed and coverage may only be denied where the claim arises out of activities not associated with the practice of law. Gen. Acc. Ins. C. v. Namesnik, 790 F.2d 1397 (9th Cir. 1986) (applying Arizona law and holding no coverage for attorney when soliciting investment in corporations/partnerships formed by attorney.). The definition of "professional services" does not require the services be performed for Leisnoi.

As a result, ALPS has the burden of establishing that either: (i) Ward Merdes actually knew; or (ii) should have known of the facts constituting all of Leisnoi's claims in the underlying action prior to the effective date of the Policies. Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 233 (3rd Cir. 2006). The effective date of the Merdes Firm Policy is July 18, 2012. (Doc. 14-3 at pp. 1 and 3, § 1.1.) The effective date of Merdes Law Office Policy is April 1, 2013. (Doc. 14-4 at pp. 1 and 3, § 1.1.)

As an initial matter, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 255 (1986). Here, Ward Merdes denies actual knowledge of the facts constituting the claims prior to the above dates, which precludes summary judgment as to actual knowledge. (Merdes Affi. ¶ 19.) Thus, ALPS must prove that there is no genuine issue of material fact as to whether Ward Merdes "should have known" of all the claims asserted in the underlying May 20, 2013 action prior to the Policies' respective effective dates.

Here, ALPS argues that Ward Merdes knew no later than May 2009 that, since Leisnoi had moved to vacate or amend the January 25, 1995 judgment, there existed some basis for a claim against not only the Merdes Firm, but also against Ward Merdes and the Merdes Law Office. Alternatively, ALPS argues that Ward Merdes knew by March 2011 that Leisnoi had asserted its entitlement to restitution of monies paid after the writ of execution.[5] ALPS's arguments do not support summary judgment for three (3) reasons.

---

[5]    In March 2011, there is no way that Ward Merdes could have reasonably anticipated he, Merdes Law Office (which had not yet been created), and/or the Merdes Firm would be sued by Leisnoi for various claims asserted in the

First, ALPS improperly asks the Court to grant summary judgment by drawing

multiple inferences in ALPS's favor, rather than the non-moving party. <u>McSherry v. City</u>

<u>of Long Beach</u>, 584 F.3d 1129, 1135 (9th Cir. 2009). Further, ALPS is required to

defend "false and fraudulent" claims. (Doc.14-3 at p. 3, § 1.2; Doc. 14-4 at p. 3, §1.2.)

Thus, there is no presumption that Leisnoi's allegations are correct or that Ward Merdes

would have any knowledge of them. As set forth above, Leisnoi first mentioned a failure

to safeguard assets claim against Ward Merdes and the Merdes Firm on February 13,

2013, which is *after* the Merdes Firm policy's effective date. (Merdes Affi. ¶ 18.) Further,

Ward Merdes could not anticipate such a claim before Leisnoi asserted it, since the

Alaska Rules of Professional Conduct ("ARPC") do not readily apply. ARPC Rule 1.15,

refers to the ethical duty of a lawyer to safeguard the property of <u>existing</u> clients or third

persons with regard to a current matter. ARPC Rule 1.9, entitled "Duties to Former

Clients" is expressly limited to the obligation to keep <u>former</u> clients' confidences.[6]

Further, Ward Merdes had no actual or constructive knowledge of the other new

claims against Merdes Law Office and Ward Merdes until after service of the May 20,

2013 underlying Complaint, which is after the April 1, 2013 Merdes Law Office policy

effective date. (Merdes Affi. ¶ 19.)

---

underlying case. This is particularly true because as of March 2011, the alleged breach of contract, fraudulent conveyances, conspiracy, and unfair trade practices basing Leisnoi's claims had not even allegedly occurred yet, according to Leisnoi.

[6] On May 27, 2013, Ward Merdes reported Leisnoi's ethical claim in writing to Steve Van Goor, Counsel for the Alaska State Bar, who told Ward Merdes that Leisnoi's position is an incorrect application of the ethical rules. An attorney's duty to safeguard client property only applies to property obtained for the client's benefit during an existing attorney client relationship. (Merdes Affi. ¶ 22.) The Merdes Firm and Leisnoi have been adverse since at least the 1994 Fee Arbitration.

Second, the underlying litigation is <u>not</u> <u>Leisnoi v. Merdes & Merdes</u>, 307 P.3d

879 (Alaska 2013), which resulted in the voiding of the Merdes Firm's 2010 writ of

execution and partial voiding of the 1995 Judgment.[7] Rather, **the underlying litigation**

**herein is the lawsuit filed by Leisnoi on May 20, 2013**. Ward Merdes and the Merdes

Law Office were not even parties to <u>Leisnoi v. Merdes & Merdes</u>, 307 P.3d 879 (Alaska

2013). <u>Id.</u> at 882, n.4. In fact, Merdes Law Office was only incorporated on January 17,

2013. (Doc .1 at ¶ 26; Doc. 12 at ¶ 26; Doc. 14 at ¶ 26.)

As discussed below in the analysis of Section 3.1.15, The Fee Dispute Exclusion

and Section 2.6, The Definition Of Damages, Leisnoi's May 20, 2013 lawsuit contains

new claims and issues. It is these new and different claims that trigger ALPS' duty to

defend, even if some or even the majority of claims are excluded from coverage. <u>Hardy</u>

<u>v. Hartford Ins. Co.</u>, 236 F.3d 287, 290 (5th Cir. 2001).

The new and different claims are: (i) Leisnoi sued Ward Merdes and the Merdes

Firm for breach of "a duty to safeguard those disputed funds [paid pursuant to the 2010

writ of attachment] under the contractual agreement with Leisnoi and under the Alaska

Rules of Professional Conduct." (Doc. 14-1 at p. 6, ¶¶ 18-19; Doc. 14-2 at p. 5, ¶¶18-

19.) In addition, Leisnoi's May 20, 2013 lawsuit alleges claims for fraudulent

conveyance and conspiracy to fraudulently convey assets against Ward Merdes and the

Merdes Law Office. (Doc. 14-1 at pp. 6-9; Doc. 14-2 at pp. 6-8.) Under the conspiracy to

fraudulently convey assets claim, Leisnoi seeks to hold the Merdes Firm, Ward Merdes

---

[7]     By that time, the Merdes Firm had prevailed in the 1994 State Bar fee arbitration,
the 1995 Confirmation of the Arbitration, which Leisnoi never appealed, and the
2010 Writ of Execution. In other words, three (3) arbitrators and two (2) superior
court judges had agreed with the Merdes Firm. <u>Leisnoi v. Merdes & Merdes</u>, 307
P.3d at 883-84.

and Merdes Law Office "jointly and severally liable" for the full amount of its claims regardless of what each defendant actually received. (Doc. 14-1 at pp. 8-9, ¶ 38; Doc. 14-2 at pp. 7-8, ¶ 37.) Leisnoi never mentioned these creative claims before filing its May 20, 2013 lawsuit. They are fiction, factually devoid of merit. As a result, Ward Merdes, on behalf of the Merdes Firm and/or the Merdes Law Office, did not have actual or constructive knowledge of the new and different claims asserted in the underlying action prior to the effective date of the ALPS policies.

## VI. THE ACT, ERROR, OR OMISSION GIVING RISE TO THE UNDERLYING SUIT OCCURRED DURING THE POLICIES' LOSS INCLUSION AND RETROACTIVE PERIODS.

Both Policies limit coverage to claims "aris[ing] from an act, error, omission or personal injury that happened on or after the loss inclusion date and the retroactive coverage date . . ." (Doc. 14-3 at p. 3, Insuring Agreements § 1.1; Doc. 14-4 at p. 3, Insuring Agreements § 1.1.1.) The Merdes Firm's Policy loss inclusion date is July 18, 1989, and the retroactive date is January 1, 1990. (Doc. 35 at p. 17.) The Merdes Law Office's Policy loss inclusion and retroactive dates are both April 1, 2013. (Doc. 35 at p. 17.) Ward Merdes is a named insured attorney under both policies.

As an initial matter, when interpreting insurance policies, limitations on coverage are narrowly construed, language granting coverage is construed broadly. State Farm Mut. Auto. Ins. Co. v. Patridge, 10 Cal.3d 94, 101-02 (1973) (when the phrase "arising out of" is used to exclude coverage, rather to broaden coverage provision, it is interpreted narrowly against the insurer). For purposes of finding coverage, courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is well settled this language does not import any

particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship. St. Paul Mercury Ins. Co. v. Mountain West Farm Bureau Mut. Ins. Co., 210 Cal.App.4th 645, 658-659 (2012).

Even cases cited by ALPS disclaiming coverage recognize the distinction between: (i) "a continuing scheme of wrongdoing which began prior to the retroactive date of the policy" that is keyed to the original wrongful act; and (ii) "distinct obligations over time" Ferguson v. General Star Indem. Co., 582 F. Supp.2d 91, 101 (D.Mass. 2008).[8] Here, Leisnoi has not alleged a continuing scheme of wrong doing in each of the Merdes Defendants' participated in going back to the 1988 fee agreement.

ALPS incorrectly argues that the underlying suit "arises entirely from a contingent fee agreement entered into in January 1988" and there is no "coverage for claims arising from acts, errors, or omissions prior to the retroactive date, even if the alleged injury or damage continue after the retroactive date." (Doc. 35 at pp. 17-18) (emphasis added). Construing the "arising out of" language narrowly since it negates coverage, ALPS must prove more than the 1988 Fee Agreement was the "but for" cause of all subsequent events. Leisnoi claims Ward Merdes and Merdes Firm failed to safeguard Leisnoi's funds between 2010, when Leisnoi paid the Merdes Firm based on the writ of

---

[8]     To create the incorrect impression that the "arising out of" language is broadly construed to limit coverage, ALPS cites cases where there is no allegation of misconduct during the policy period. Evans v. Medical Inter-Ins. Exch., 856 A.2d 609, 615 (D.C. 2004) (no care provided during policy period); Coregis Ins. Co. v. Blancato, 75 F. Supp.2d 319 (S.D.N.Y. 1999) ("all of the alleged acts and omissions upon which the malpractice claim is based . . . occurred prior to the Retroactive Date").

execution, and February 1, 2013. <u>No insured seeks coverage for Leisnoi's partially</u> <u>successful efforts between 2009 to 2013 to void the 1995 Judgment</u>.

**A.      Claims Against the Merdes Firm and Ward Merdes Arise After January 1, 1990.**

ALPS is required to defend "false and fraudulent" claims. (Doc.14-3 at 3 § 1.2; Doc. 14-4 at 3 §1.2.) Leisnoi's claims against the Merdes Firm and Ward Merdes under the Merdes Firm Policy arise in 2010. Leisnoi, in its 05/20/13 Complaint and 08/19/13 Amended Complaint, alleges: (i) the Merdes Firm and Ward Merdes failed to safeguard funds paid to the Merdes Firm in 2010 as required by contract and the Alaska Rules of Professional Conduct; (ii) the Merdes Firm and Ward Merdes engaged in fraudulent transfers intended to defraud Leisnoi "between 2010 and present"; (iii) the Merdes Firm and Ward Merdes engaged in a conspiracy to fraudulently convey assets with an intent to defraud Leisnoi, necessarily between 2010 and present, including payments to Ward Merdes; (iv) the Merdes Firm and Ward Merdes engaged in unfair trade practices by fraudulently "hiding assets," again, between 2010 and present; and (v) the Merdes Firm and Ward Merdes's conduct between 2010 and present, was "wanton, willful and in reckless disregard of the rights of Leisnoi," and therefore deserving of an award of punitive damages.(Doc. 14-1 at 5-9; Doc. 14-2 at 8-9.)

Finally, according to Leisnoi, none of Leisnoi's claims against the Merdes Firm and Ward Merdes under the Merdes Firm Policy arise from acts, errors, or omissions that occurred prior to 2010. (Kane Affi. ¶ 2, Ex. 4 at p. 2.) Thus, Leisnoi's claims fall within the loss inclusion and retroactive dates of the Merdes Firm's Policy.

**B.      Claims Against the Merdes Law Office and Ward Merdes Arise After April 1, 2013.**

Again, ALPS is required to defend "false and fraudulent" claims. (Doc.14-3 at 3 §
1.2; Doc. 14-4 at 3 §1.2.) The Merdes Law Office came into existence on January 17,
2013. (Doc. 1 at ¶ 26; Doc. 12 at ¶ 26; Doc. 14 at ¶ 26.) Only Ed Merdes contracted
with Leisnoi. The Merdes Law Office and Ward Merdes never entered into a fee
agreement with Leisnoi, and Leisnoi never paid fees directly to either Ward Merdes or
Merdes Law Office. (Doc. 1-1 at ¶ 13; Doc. 14-1 at ¶ 13; Doc. 14-2 at ¶ 13.) (Merdes
Affi. ¶ 8.)

In the underlying action filed May 20, 2013, Leisnoi alleged that Merdes Law
Office and Ward Merdes engaged in: (i) fraudulent conveyances,[9] (ii) conspiracy to
commit fraudulent conveyances; and (iii) unfair trade practices.[10] Leisnoi alleges that
Merdes Law Office and Ward Merdes engaged in a series of fraudulent transactions,
specifically, that the Merdes Firm transferred clients and goodwill to the Merdes Law
Office. (Doc. 14-1; Doc. 14-2.)

Thus, the underlying case against Merdes Law Office and Ward Merdes arises
out of a series of client file transfers made between the Merdes Firm and Merdes Law
Office ending in November 2013. For the Court's convenience, copies of post-April 2013
client transfers are attached to the Affidavit of Ward Merdes as Exhibit 2. Leisnoi
asserts that the client file transfers were fraudulent because they allowed fees "earned"

---

[9]     Since the fraudulent conveyance and conspiracy to commit fraudulent
        conveyances touch Ward Merdes under both policies, they are discussed in
        detail below.
[10]    Leisnoi added violation of Alaska Unfair Trade Practices Act, when it filed a First
        Amended Complaint on August 19, 2013. (Doc. 14-2.)

by the Merdes Firm to be paid to the Merdes Law Office.[11] Leisnoi also asserts that the

Merdes Firm transferred goodwill to the Merdes Law Office.[12] Thus, Leisnoi's claims

against the Merdes Law Office and Ward Merdes under the Merdes Law Office Policy

do not arise from the 1988 fee agreement between Leisnoi and Ed Merdes. In sum,

since alleged fraudulent transfers took place on or after April 1, 2013, they fall within the

loss inclusion and retroactive dates stated in the Merdes Law Office Policy.

In February of 2013, Leisnoi acquired the right to reimbursement of money paid

to the Merdes Firm and the Merdes Firm received a corresponding right to pursue a

*quantum meruit* claim back against Leisnoi. <u>Leisnoi, Inc. v. Merdes & Merdes, P.C.</u>, 307

P.3d 879, 894 (Alaska 2013). Since the value of the services provided were worth $95

million according to Leisnoi's officer's own declaration, Ward Merdes actually and

reasonably believed (and continues to believe) that Leisnoi would end up owing money

to the Merdes Firm, despite the Supreme Court's 02/01/13 ruling that Merdes & Merdes,

P.C. return the $643,760 to Leisnoi. (Merdes Affi. ¶ 17.)[13] At the end of the day, the case

would net in favor of Merdes & Merdes, P.C.

---

[11]    Once Ward Merdes stopped working for the Merdes Firm, it had no attorney to
handle cases. Further, even in the personal injury cases where money was
coming in the door, there was still a great deal of subrogation and lien work that
needed to be completed. (Merdes Affi. ¶ 20.)

[12]    Leisnoi fails to recognize: (i) a sole practitioner's law practice has no goodwill as
a matter of law; and (ii) "clients are not commodities that can be purchased and
sold at will." <u>Richmond v. Richmond</u>, 779 P.2d 1211, 1214 (Alaska 1989).

[13]    On November 18, 2013, the trial court granted summary judgment in favor of
Leisnoi on the Merdes Firm's *quantum meruit* claim. On November 29, 2013, the
Merdes Firm filed a petition for writ with the Alaska Supreme Court. On
December 12, 2013, Leisnoi filed a response to the petition. On January 14,
2014, the Alaska Supreme Court denied the writ. The Merdes Firm will pursue
the issue on appeal after entry of judgment in the underlying action. (Merdes Affi.
¶ 23.)

As a result, Leisnoi's claims against Ward Merdes and the Merdes Law Office under the Merdes Law Office Policy arise from acts, errors, or omissions that occurred on or after April 1, 2013. Thus, Leisnoi's claims fall within the loss inclusion and retroactive dates of the Merdes Law Office's Policy.

## VII. ALPS CANNOT RELY UPON SECTION 3.1.15, THE FEE DISPUTE EXCLUSION OR SECTION 2.6, THE DEFINITION OF DAMAGES, TO DENY ITS DUTY TO DEFEND.

Whether the language excluding "return of fees" appears in the insuring clause or an exclusion, "[t]he effect of the language is the same[.]" <u>Con'tl. Cas. Co. v. Donald T. Bertucci</u>, Ltd., 926 N.E.2d 833, 842 (Ill. App. 2010). "The issue is simply whether [the amount sought] represents fees paid to [the insured ]." <u>Id.</u> "Grants of coverage should be construed broadly 'while exclusions are interpreted narrowly against the insured.'" <u>Bering Strait School Dist. v. RLI Ins. Co.</u>, 873 P.2d 1292, 1295 (Alaska 1995) (citations omitted). Here, ALPS' policies contain such language barring coverage in both an exclusion and the definition of "damages."

ALPS' policies contain a Fee Dispute Exclusion, providing:

**3.1 THIS POLICY DOES NOT APPLY TO ANY CLAIM ARISING FROM OR IN CONNECTION WITH:**

3.1.15.     <u>Any dispute over fees</u> or **costs**, or any claim that seeks, whether directly or indirectly, the return, <u>reimbursement of disgorgement of fees</u>, costs, <u>or other funds or property held by an **Insured**</u>.

(Doc. 14-3 at pp. 8-9, Doc. 14-4 at pp. 8-9) (bold in original; underline added).

Similarly, ALPS' policies contain a grant of coverage in Section 1.1, which incorporates the definition of "Damages" in Section 2.6. Section 2.6 provides:

2.6     **Damages** means any monetary award by way of judgment or final arbitration, or any settlement, but <u>does not include</u>:

2.6.1   punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations; or

2.6.2   awarded deemed uninsurable by law; or

2.6.3   injunctive declaratory, or other equitable relief, or costs or fees incident thereto; or

2.6.4   <u>restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property presently or formerly held by an **Insured**</u>.

(Doc. 14-3 at pp. 5-6, Doc. 14-4 at p. 5-6) (bold in original; underline added).

However, the Fee Dispute Provision and the definition of "damages" do not bar ALPS' duty to defend the Merdes Firm, Ward Merdes and the Merdes Law Office for four (4) reasons.

**A.      Leisnoi Never Had A "Fee Dispute" With Ward Merdes Or Merdes Law Office.**

On February 1, 2013, the Alaska Supreme Court ordered the Merdes Firm [Merdes & Merdes, P.C.] to return funds that Leisnoi paid the Merdes Firm under the void 2010 writ of execution. <u>Leisnoi v. Merdes & Merdes</u>, 307 P.3d 879, 882 and n.4 (Alaska 2013). Nothing in that decision required Ward Merdes or Merdes Law Office to pay any funds to Leisnoi. Similarly, it is not alleged that Leisnoi ever paid any funds directly to Ward Merdes or Merdes Law Office. As a result, Leisnoi never had a "fee dispute" with either Ward Merdes or Merdes Law Office within the meaning of the Fee Dispute Exclusion.

On February 13, 2013, Leisnoi demanded "return of the monies paid by Leisnoi, Inc. to [the Merdes Firm] on July 28, 2010." (Doc 35-2 at p. 1.) On May 20, 2013, Leisnoi filed a separate action against the Merdes Firm, Ward Merdes and Merdes Law

Office. Again, Leisnoi specifically alleged that the funds were paid only to the Merdes Firm [Merdes & Merdes, P.C.]. (Doc. 14-1 at p. 6, ¶ 17; Doc. 14-2 at p. 5, ¶ 17.) Yet, Leisnoi claimed Ward Merdes and the Merdes Firm breached "a duty to safeguard those disputed funds [paid pursuant to the 2010 writ of attachment] under the contractual agreement with Leisnoi and under the Alaska Rules of Professional Conduct." (Doc. 14-1 at p. 6, ¶¶ 18-19; Doc. 14-2 at p. 5, ¶¶ 18-19.) Thus, the Fee Dispute Exclusion does not bar ALPS's duty to defend Ward Merdes and Merdes Law Office.

**B.     Leisnoi Has Alleged Claims Against Ward Merdes And The Merdes Firm Beyond A Refund Of Fees Paid.**

ALPS relies on two (2) cases for the proposition that when narrowly construing a Fee Dispute Exclusion, the Court must look to the "relief requested"; not "the actual theory of recovery." (Doc. 35 at p. 22.) Those cases actually hold, where a plaintiff expressly limits its own claims to the return of attorney's fees paid, the Fee Dispute Exclusion precludes coverage. Cont'l. Cas. Co. v. Brady, 907 P.2d 807, 811 (Idaho 1995) ("the Duvalls' complaint simply does not support a claim for any damages unrelated to a return of fees."); Schabel, P.C. v. Nat'l. Ins. Co., 923 F. Supp. 681, 684 (D.N.J. 1996) ("Farrell could have structured his claim to recover incidental or consequential damages stemming from both legal malpractice and ethical violations. Farrell did not take that course of action; rather, he opted to restrict the nature of his relief to the return or the recoupment of the fees.") (underline emphasis added).

Here, in addition to Leisnoi's restitution allegations against the Merdes Firm, Leisnoi alleged that the Merdes Firm and Ward Merdes breached "a duty to safeguard

those disputed funds [paid pursuant to the 2010 writ of attachment] under the contractual agreement with Leisnoi and under the Alaska Rules of Professional Conduct." (Doc. 14-1 at p. 6, ¶ 18; Doc. 14-2 at p. 5, ¶ 1.) For that breach, Leisnoi claimed "financial damages in an amount to be established at trial, and in any event <u>in excess of</u> $643,760." (Doc. 14-1 at p. 6, ¶ 20; Doc. 14-2 at p. 5, ¶ 20) (underline emphasis added). Similarly, Leisnoi seeks, *inter alia*, in its Prayer for Relief:

> 3.      An award of compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial, plus treble damages as allowed by statute.

(Doc. 14-1 at p. 9; Doc. 14-2 at p. 10.)

Because Leisnoi seeks damages for breach of contract and breach of the Alaska Rules of Professional Conduct that cannot be attributed solely to restitution, the Merdes Firm and Ward Merdes are entitled to a defense. In fact, to the extent Ward Merdes did not receive money from Leisnoi, ALPS insured Ward Merdes cannot be responsible for restitution. <u>McCostis v. Home Ins. Co. of Indiana</u>, 31 F.3d 110 (2nd Cir. 1994).

**C.      Leisnoi Has Alleged Claims Against Ward Merdes And The Merdes Law Office That Include Fraudulent Conveyance and Unfair Trade Practices Claims, Which Go Beyond Claims For Restitution.**

Leisnoi has alleged claims for fraudulent conveyance and conspiracy to fraudulently convey assets against Ward Merdes and the Merdes Law Office. (Doc. 14-1 at pp. 6-9; Doc. 14-2 at pp. 6-8.) Among the remedies for fraudulent conveyance are voiding the transfers and monetary damages. <u>Summers v. Hagen</u>, 852 P.2d 1165, 1169-70 (Alaska 1993) ("If voiding the transfer is

inadequate, however, the plaintiff is entitled to damages equaling the lesser of

the value of the property fraudulently transferred or the amount of the debt.").

Yet under the conspiracy to fraudulently convey assets, Leisnoi seeks to hold

the Merdes Firm, Ward Merdes and the Merdes Law Office "jointly and severally

liable" for the full amount of its claims regardless of what each defendant

actually received. (Doc. 14-1 at pp. 8-9, ¶ 37; Doc. 14-2 at pp. 7-9, ¶ 37.) As a

result, Ward Merdes and the Merdes Law Office could be required to pay

"damages" as further discussed below. McCostis v. Home Ins. Co. of Indiana,

31 F.3d 110, 112 (2nd Cir. 1994).

### D. The Fee Dispute Exclusion And Definition Of "Damages" Is Ambiguous And Must Be Interpreted In Favor The Insureds.

"[W]here a clause in an insurance policy is ambiguous in the sense that it is
reasonably susceptible to more than one interpretation, the court accepts that
interpretation which most favors the insured."

Bering Strait School Dist. v. RLI Ins. Co., 873 P.2d 1292, 1295 (Alaska 1995);

see also McCostis v. Home Ins. Co., 31 F.3d 110, 113 (2d Cir. 1994);

Ticketmaster, LLC v. Illinois Union Ins. Co., 524 Fed.Appx. 329, 331-32 (9th Cir.

2013).

ALPS relies on cases where the restitution was sought only from the person who

received the fees, not persons or entities receiving funds or property from the original

recipient in secondary transactions. Bank of the West v. Superior Court, 833 P.2d 545,

548 (Cal. 1992) ("plaintiffs' only demand for money, other than for punitive damages

and attorneys' fees, was for "restitution . . . of any and all amounts collected by defendants through their unlawful and unfair business practices. . . .")[14]

ALPS also relies on <u>CNL Hotels & Resorts, Inc. v. Houston Cas. Co.</u>, 505 F. Supp.2d 1317 (M.D.Fla. 2007) which is instructive. If "restitution" is sought from persons who did receive any money from the plaintiff, then the claim is one for "damages":

> CNL also argues it would be unfair to preclude individual directors and officers from recovering payments on Section 11 claims, as such individuals can be held liable even if they did not receive any money from the purchasers of the overpriced securities. Although no such individual is seeking recovery in the instant case, the *Level 3* line of cases would not preclude it. In a Section 11 case, <u>if an entity makes a payment that constitutes something other than disgorgement of its own ill-gotten gains, it has suffered a loss</u>.

<u>Id.</u> at 1324 (citations omitted; emphasis added).

Here, the Fee Dispute Exclusion and definition of "damages" are ambiguous in three (3) ways. <u>McCostis v. Home Ins. Co. of Indiana</u>, 31 F.3d 110, 112 (2nd Cir. 1994):

First, both provisions refer to "an insured," rather than "all insureds." As a result, those provisions could reasonably be understood to bar coverage for either: (i) only an insured who received professional services fees directly from Leisnoi; or (ii) all insureds if any individual insured received professional services fees directly from Leisnoi. Since both interpretations are reasonable, the narrower exclusion applies. Thus, the provisions can only potentially bar coverage as to the Merdes Firm [Merdes & Merdes,

---

[14]    ALPS' reliance on <u>SnyderGeneral Corp. v. Century Indem. Co.</u>, 907 F. Supp. 991 (N.D.Tex. 1995) is puzzling. The cases involved an insured seeking reimbursement for its own environmental cleanup costs. The term "damages" was not defined in the policy, but Texas recognizes: (i) a distinction between legal damages and equitable relief; and (ii) environmental response costs were deemed "equitable." <u>Id.</u> at 1003-05. Similarly, <u>Continental Cas. Co. v. Donald T. Bertucci, Ltd.</u>, 926 N.E.2d 833, 837 (Ill.App. 1 Dist. 2010), is of no help to ALPS, because the case discusses that both the Firm and the individual attorney received improper attorney's fees from the settlement.

P.C.] which received money directly from Leisnoi (pursuant to the 1995 Judgment and writ of execution), not the other insureds purportedly further down the payment chain, *i.e.* Ward Merdes and Merdes Law Office, which did not directly receive any money or property from Leisnoi. (Significantly, Merdes Law Office never received any of Leisnoi's money; instead Leisnoi claims the Merdes Firm transferred clients and goodwill.)

Second, in <u>McCostis</u>, the Second Circuit reversed the District Court's conclusion that there was no duty to defend, because the Fee Dispute Exclusion was ambiguous as to whether it applied to "fees paid to third parties." 31 F.3d at 112. The <u>McCostis</u> insured was an attorney, who allegedly received $335,000.00 out of $755,000.00 fraudulently billed fees.

> <u>[T]he policy does not provide a clear answer to the question of whether the return or restitution of legal fees exclusion would be applicable for disputes concerning fees paid to third parties</u>. The exclusion provision could mean, as the district court effectively concluded, that all client billing controversies are excluded from coverage. On the other hand, <u>the use of the words "return" and "restitution" seems to indicate that the exclusion would pertain only to situations where the insured received the disputed funds and is forced to repay the monies to the client</u>. Accordingly, we find that the return or restitution of legal fees exclusion is ambiguous as applied to McCostis in this case.

<u>Id.</u>

As a result, the provisions do not bar coverage for Ward Merdes and the Merdes Law Office.

Third, the Court must carefully examine allegations against the Merdes Firm to determine if the provisions apply. Coverage can exist if any allegations are outside that exclusion. <u>Ticketmaster, LLC v. Illinois Union Ins. Co.</u>, 524 Fed.Appx. 329, 331-32 (9th Cir. 2013). In <u>Ticketmaster</u>, the Ninth Circuit found

ambiguous language in the Fee Dispute Exclusion/definition of damages sufficient to require the insurer to provide a defense:

> There are <u>at least some allegations in the Schlesinger action that do not involve the amount charged for uncontested services</u>. For example, the allegation that Ticketmaster performed no services in exchange for its order-processing charge does not dispute the amount charged, but the relationship between any fee at all and the services provided. That dispute, at least, is within interpretation (ii), but not interpretation (i), of Exclusion E.

<u>Ticketmaster, LLC v. Illinois Union Ins. Co.</u>, 524 Fed.Appx. 329, 331-32 (9th Cir. 2013) (emphasis added).

Here, in addition to Leisnoi's restitution allegations against the Merdes Firm, as set forth above, Leisnoi alleged that the Merdes Firm and Ward Merdes breached "a duty to safeguard those disputed funds [paid pursuant to the 2010 writ of attachment] under the contractual agreement with Leisnoi and under the Alaska Rules of Professional Conduct" and claimed compensatory damages in excess of the amount previously ordered returned by the Alaska Supreme Court. (Doc. 14-1 at p. 6, ¶¶ 18-20; Doc. 14-2 at p. 5 ¶¶ 18-20.) Therefore, the Fee Dispute Exclusion does not bar coverage for the Merdes Firm or Ward Merdes.

## VIII.    CONCLUSION

For the foregoing reasons, ALPS's Motion should be denied.

KANE LAW FIRM
Attorney for Defendants

By: _____/s/_____
          Brad S. Kane, #9111089

On 05/23/14 copy mailed and emailed to:

Clay A. Young (#7410117) Fax: (907) 277-1331
cay@delaneywiles.com
Kendra E. Bowman (#0511109)
keb@delanywiles.com
Delaney Wiles
1007 W. 3rd Ave. #400
Anchorage, AK 99501

Kevin D. Hartzell
Kevin.Hartzell@kutakrock.com
Angela Probasco
Angela.Probasco@kutakrock.com
Kutak Rock LLP
1650 Farnam St.
Omaha, NE 68102

/s/
Brad S. Kane