# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

ALPS PROPERTY & CASUALTY
INSURANCE COMPANY,

               Plaintiff,

      v.

MERDES & MERDES, P.C., et al.

               Defendants.

Case No. 4:14-cv-00002-SLG

## ORDER RE MOTION FOR SUMMARY JUDGMENT

This is an action by ALPS Property & Casualty Insurance Company ("ALPS")
seeking a declaration that it has no duty to defend or indemnify the named insureds of
two professional liability policies that it issued in a suit against those insureds presently
proceeding in Alaska state court. Before the Court at Docket 35 is ALPS' Motion for
Summary Judgment filed on April 15, 2014.[1] Defendants opposed on May 23, 2014, and
ALPS replied on June 16, 2014.[2] Oral argument was not requested and was not

---

[1] Docket 35 (Motion) at 22.

[2] Docket 40 (Opp.) at 25; Docket 44 (Reply) at 17.

necessary to the Court's determination. For the reasons discussed below, ALPS' Motion for Summary Judgment will be granted in part and denied in part.

## BACKGROUND

This action is brought against three defendants: Ward M. Merdes, an attorney admitted to practice in Alaska; the law firm Merdes & Merdes, P.C. ("Merdes Firm"); and the law firm Merdes Law Office, P.C. ("Merdes Law Office") (collectively "Defendants").

On July 6, 2012, ALPS issued a Lawyers Professional Liability Insurance Policy to the Merdes Firm ("Merdes Firm Policy").[3] Ward M. Merdes was the only named attorney insured under the policy. The Merdes Firm Policy was in effect from July 18, 2012 until July 18, 2013. It had a retroactive date for Ward Merdes of January 1, 1990, and a loss inclusion date of July 18, 1989.[4]

On January 17, 2013, Mr. Merdes incorporated the Merdes Law Office.[5] On April 29, 2013, ALPS issued a Lawyers Professional Liability Insurance Policy to the Merdes Law Office ("Merdes Law Office Policy").[6] Ward M. Merdes was the only named attorney insured under the policy. The Merdes Law Office Policy was in effect from April 1, 2013

---

[3] Docket 14-3 (Merdes Firm Policy) at 1–2.

[4] Docket 14-3 (Merdes Firm Policy) at 1. The two dates function to establish coverage limits for the policies at issue here. Each individual attorney on the policy has an applicable Retroactive Date that establishes a date before which the policy does not provide coverage for the acts of that attorney. *See id.* at §§ 2.14.2, 2.24. The Loss Inclusion Date establishes a similar boundary for coverage of the insured firm. *See id.* at § 1.1.

[5] Docket 14 (Amended Complaint) at 5 ¶ 26; Docket 55 (Amended Answer) at 5 ¶ 26 (admitted).

[6] Docket 14-4 (Merdes Law Office Policy) at 1.

until April 1, 2014.  It had a retroactive date for Ward Merdes of April 1, 2013, and a loss inclusion date of April 1, 2013.[7]

The language of each policy is set forth in ALPS' Amended Complaint and attached exhibits and is not reproduced here.[8]  Each policy is a "claims-made and reported" policy, extending coverage to claims made against the insured and reported to the insurer during the effective period of the policy.[9]  The provisions of each policy at issue are substantively identical, with the exception of a special endorsement to the Merdes Law Office Policy which excludes coverage for any "act, error or omission in professional services rendered or that should have been rendered by the Insured in regard to the Insured's relationship with or work performed for or on behalf of [the Merdes Firm.]"[10]

Although the policies were issued in 2012 and 2013, the events that give rise to this case began much earlier and do not appear to be in dispute.  In 1988, Edward A. Merdes, the father of Mr. Merdes, entered into a written contingency fee agreement to represent Leisnoi, Inc. in a land claims lawsuit.  Leisnoi is a village corporation certified under the Alaska Native Claims Settlement Act (ANCSA) and was being sued by a third party that sought to prevent the transfer of certain land patents to Leisnoi.[11]  On February

---

[7] Docket 14-4 (Merdes Law Office Policy) at 1.

[8] Docket 14 (Amended Complaint) at 7–10; *see* Dockets 14-3 and 14-4 (Policies).

[9] *See generally* 13 Couch on Ins. § 186:13.

[10] Docket 14-4 (Merdes Law Office Policy) at 17.

[11] Docket 55 (Amended Answer) at 2 ¶ 7–8.

22, 1990, Edward Merdes and Ward Merdes formed the Merdes Firm. Defendants allege that Edward Merdes assigned his rights under the contingent fee agreement to the Merdes Firm.[12]

On July 24, 1992, Leisnoi prevailed in the land claims lawsuit.[13] A fee dispute then arose between Leisnoi and the Merdes Firm. In 1995, the Alaska Bar Association's Fee Review Committee found that pursuant to the parties' contingent fee agreement, the Merdes Firm was entitled to $721,000 plus interest, together with $55,000 in court-awarded fees. The Alaska Superior Court issued a judgment against Leisnoi in accordance with the Committee's finding. Leisnoi made partial payments on the judgment to the Merdes Firm from 1995 to 2001, but defaulted in 2002.[14] On January 27, 2009, the Merdes Firm moved the Superior Court for a writ of execution on the judgment. Leisnoi opposed, asserting that the Merdes Firm's motion was untimely. On May 19, 2009, Leisnoi moved the Court for relief from the 1995 judgment under Alaska Rule of Civil Procedure 60(b).[15] On January 13, 2010, the Alaska Superior Court granted the Merdes Firm's motion for a writ of execution on the balance owing on the 1995 judgment and denied Leisnoi's 60(b) motion.[16] On February 22, 2010, Leisnoi appealed the Superior Court's writ of execution and denial of its 60(b) motion, arguing that the "fee

---

[12] Docket 55 (Amended Answer) at 3 ¶ 10.

[13] Docket 55 (Amended Answer) at 3 ¶ 11; *see Leisnoi v. Stratman*, 835 P.2d 1202 (Alaska 1992).

[14] Docket 14 (Amended Compl.) at 4 ¶¶ 13–16; Docket 55 (Amended Answer) at 3–4 ¶¶ 13–16 (admitted).

[15] *See Leisnoi Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 884 (Alaska 2013); *see also* Docket 36-4 (Merdes Motion), Docket 36-6 (Leisnoi Motion), Docket 36-7 (Leisnoi Supporting Memo).

[16] Docket 55 (Amended Answer) at 4 ¶ 21; *see* Docket 36-8 (Sup. Ct. Order).

agreement with [the] Merdes [Firm], the Arbitration Panel's fee award, the superior court's 1995 entry of judgment, and the superior court's 2010 issuance of the writ of execution violated" ANCSA.[17]  However, on July 28, 2010, Leisnoi paid the Merdes Firm $643,760, the entire remaining balance then owed on the judgment.[18]  Leisnoi sought the return of that payment in its appeal, but there is no indication in the record that when Leisnoi paid the Merdes Firm, it requested that the Merdes Firm safeguard that payment or that Leisnoi sought to deposit the funds with the Court in lieu of tendering them directly to the Merdes Firm while the appeal was pending.[19]

On February 1, 2013, the Alaska Supreme Court issued its decision.  The Court held that the writ of execution was unlawful because "Leisnoi's contingency fee agreement with [the Merdes Firm] violated ANCSA's prohibition against contingency fee agreements."[20]  The Court also held that "Leisnoi is entitled to recover the balance that it paid after the writ of execution was unlawfully issued, but it is not entitled to recover payments made prior to the issuance of the writ of execution."[21]

---

[17] *Leisnoi*, 307 P.3d at 887; *see* 36-10 (Docketing Statement) at 1.

[18] Docket 55 (Amended Answer) at 4 ¶ 24; *see* Opening Brief of Appellants, *Leisnoi*, 307 P.3d 897 (Alaska 2013) (No. S-13790), 2010 WL 5487194 at *6 ("So that it could pursue business opportunities, Leisnoi was forced to borrow the funds and pay the remaining balance in full.").

[19] Appellant's Reply Brief, *Leisnoi*, 307 P.3d 897 (Alaska 2013) (No. S-13790), 2011 WL 2214592 at *19–20.  Alaska law expressly permits a party to post such a bond.  *See* Alaska R. Civ. P. 62(d) (permitting the posting of a supersedeas bond to stay execution of judgment); Alaska R. Civ. P. 67 (permitting deposit of funds at issue with court, to be released only when a party becomes entitled to it); Alaska R. App. P. 204(d) (granting automatic stay of judgment while on appeal when supersedeas bond posted with lower court, generally constituting a sum satisfying the judgment in full together with costs and interest).

[20] *Leisnoi*, 307 P.3d at 894.

[21] *Leisnoi*, 307 P.3d at 894.

In a letter from Leisnoi dated February 13, 2013 that was addressed to Mr. Merdes and the Merdes Firm, Leisnoi demanded the return of the $643,760 that it had paid on July 28, 2010, together with interest.[22]  In a letter to ALPS that was also dated February 13, 2013, Mr. Merdes requested defense and indemnity from ALPS for Leisnoi's claims under the Merdes Firm Policy.  That letter also notified ALPS that the Merdes Firm was "shutting down" and requested a new policy for the Merdes Law Office.[23]  In a letter to Mr. Merdes dated February 21, 2013, ALPS stated that based on the information Mr. Merdes had provided about the Leisnoi demand, "it is ALPS ['] position that no coverage exists under any ALPS policy for this matter."[24]  As noted above, on February 29, 2013, ALPS issued the Merdes Law Office Policy with an effective date of April 1, 2013.[25]

On May 20, 2013, Leisnoi filed the suit for which Defendants seek coverage in Alaska Superior Court.[26]  It amended its complaint on August 19, 2013.[27]  Leisnoi named the Merdes Firm, the Merdes Law Office, and Mr. Merdes as defendants in its suit, along with "John Doe I and John Doe II . . . individuals who are currently unknown to Leisnoi, but who are believed . . . to have fraudulently received assets from the Merdes Firm."[28]

---

[22] Docket 35-2 (Demand Letter) at 1.

[23] Docket 35-3 (Merdes Letter) at 1.

[24] Docket 40-4 (ALPS Letter) at 2; Docket 14 (Amended Complaint) at 10 ¶ 46; Docket 55 (Amended Answer) at 7 ¶ 46 (admitted).

[25] Docket 14-4 (Merdes Law Office Policy) at 1.

[26] *See* Docket 14-1 (Leisnoi Compl.).

[27] *See* Docket 14-2 (Leisnoi Amended Compl.).

[28] Docket 1-1 (State Court Compl.) at 3.

Leisnoi brings five claims and generally alleges that Defendants took actions to transfer value from the Merdes Firm to other parties so that the Merdes Firm would be unable to repay the now-invalid 2010 payment.[29]  In its first count, it seeks compensatory damages for breach of contract from the Merdes Firm and Mr. Merdes, alleging that they each failed in their contractual obligation to safeguard disputed funds.  In its second and third counts, Leisnoi seeks compensatory damages and equitable relief to remedy alleged fraudulent conveyances between the Defendants.  In its fourth count, Leisnoi seeks compensatory and treble damages for alleged violations of Alaska's Unfair Trade Practices and Consumer Protection Act.  And in its fifth count, it seeks punitive damages.[30]  On June 18, 2013, Defendants notified ALPS of the suit.[31]  On July 11, 2013, ALPS denied coverage for the claims made in the Leisnoi suit under both the Merdes Firm Policy and the Merdes Law Office Policy.[32]  This suit was then filed on August 1, 2013.[33]

---

[29] Docket 14-2 (Leisnoi Amended Compl.) at 2–4.  Leisnoi's Amended Complaint notes that "Ward Merdes avers that the Merdes Firm does not have $643,760, or even 1/5 of that amount, to return to Leisnoi, but he does not state where the money went."  *Id.* at 4 ¶ 13.

[30] Docket 14-2 (Leisnoi Amended Compl.) at 5–9. *See generally* AS 45.50.471 et seq.

[31] Docket 40-7 (Kane Letter).

[32] Docket 14 (Amended Compl.) at 10 ¶ 48; Docket 55 (Amended Answer) at 7 ¶ 48 (admitted).

[33] Docket 1 (Compl.).

**DISCUSSION**

## I. Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because complete diversity exists between ALPS and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.[34]

## II. Summary Judgment Standard

In this diversity action, the Court applies federal law to procedural issues and Alaska law to substantive legal issues. ALPS moves the Court for summary judgment, seeking a declaration that it has no duty to defend or indemnify Defendants under the Merdes Firm and Merdes Law Office Policies. Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[35] If the moving party meets this burden, the non-moving party must present specific evidence demonstrating the existence of a genuine issue of fact.[36] The non-moving party may not rely on mere allegations or denials. It must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[37]

---

[34] Docket 14 (Amended Compl.) at 2 ¶ 5.

[35] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

[36] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Oracle*, 627 F.3d at 387.

[37] *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party and draw "all justifiable inferences" in the non-moving party's favor.[38]  To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[39]  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[40]  If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[41]

## III.    The Duty to Defend & Indemnify

Under Alaska law, an insurer's duty to defend and its obligation to indemnify are separate and distinct contractual elements.[42]    As the Alaska Supreme Court has explained:

> Depending on the nature of the claim against the insured, the insurer may have an obligation to defend although it has no ultimate liability under the policy.  We believe that the language of the standard duty to defend clause creates a reasonable expectation on the part of the insured *whenever* a complaint states a cause of action within, or potentially within, the policy coverage . . . . Thus, even though facts extrinsic to the pleadings may show that there will be no ultimate liability under the policy, if the complaint *on its face* alleges facts which, standing alone, give rise to a possible finding of liability

---

[38] *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[39] *Anderson*, 477 U.S. at 248.

[40] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

[41] *Anderson*, 477 U.S. at 249–50 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank*, 391 U.S. at 290).

[42] *Sauer v. Home Indem. Co.*, 841 P.2d 176, 180 (Alaska 1992).

> covered by the policy, an insured has the contractual right to
> a proper defense at the expense of the insurer.[43]

"[T]he presence of other allegations in the complaint which are not within policy coverage does not relieve [an insurer] of its duty to defend."[44] Consistent with Alaska law, each of the disputed policies at issue here provides that ALPS has a "duty to defend [its insureds] even if any or all of the allegations of the claim are groundless, false or fraudulent."[45]

"Where there are no disputed facts the construction of an insurance contract is a matter for the court."[46] A court should construe "any policy restrictions in liability policies to give effect to the insured's objectively reasonable expectations."[47] "Ambiguities in an insurance polic[y] are to be construed most favorably to an insured, but ambiguities only exist when there are two or more reasonable interpretations of particular policy language."[48]

## IV.  The "Professional Services" Provision

Section 1.1 of each policy provides that ALPS "agrees to pay on behalf of the Insured all sums . . . that the Insured becomes legally obligated to pay as damages, arising from or in connection with" a "claim [that] arises from an act, error, omission or

---

[43] *Sauer*, 841 P.2d at 180 (quoting *Afcan v. Mutual Fire, Marine and Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979)) (emphasis in original).

[44] *Sauer v. Home Indem. Co.*, 841 P.2d at 181.

[45] Docket 14-3 (Merdes Firm Policy) at 3 § 1.2.1; Docket 14-4 (Merdes Law Office Policy) at 3 § 1.2.1; *see Afcan*, 595 P.2d at 645.

[46] *Serradell v. Hartford Acc. & Indem. Co.*, 843 P.2d 639, 641 (Alaska 1992).

[47] *Whittier Props. Inc. v. Alaska Nat. Ins. Co.*, 185 P.3d 84, 91 (Alaska 2008); *see West v. Umialik Ins. Co.*, 8 P.3d 1135, 1138 (Alaska 2000).

[48] *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008).

personal injury that happened on or after the loss inclusion date and the retroactive coverage date" of the policy.[49]  If the alleged acts happened within the appropriate time period, the claim must satisfy two additional provisions—the "professional services" provision and the "no prior knowledge" provision.[50]

The parties' briefing focuses on whether Leisnoi's claims fall within the no prior knowledge provision.[51]  However, that provision first requires that a claim "arises from or is in connection with an act, error or omission in professional services that were or should have been rendered by the Insured."[52]

Each policy defines "professional services" as

- services or activities performed for others as an attorney in an attorney-client relationship on behalf of one or more clients;
- services as mediator, arbitrator, or other facilitator in a dispute resolution process;
- services as administrator, conservator, guardian, executor, personal representative or trustee, so long as the Insured (a) is not a beneficiary of such estate or trust, and (b) is not receiving compensation other than fees for such services paid directly from such estate or trust; or
- services as an attorney in research or certifying title to real estate, but excluding services as a title insurance agent acting on behalf of a title insurance company, unless such services

---

[49] Docket 14-3 (Merdes Firm Policy) at § 1.1; Docket 14-4 (Merdes Law Office Policy) at §§ 1.1, 1.1.1.

[50] *See* Docket 14-3 (Merdes Firm Policy) at § 1.1; Docket 14-4 (Merdes Law Office Policy) at § 1.1.

[51] Docket 35 (Motion) at 15–17; Docket 40 (Opp.) at 9–13.

[52] Docket 14-3 (Merdes Firm Policy) at § 1.1.1; Docket 14-4 (Merdes Law Office Policy) at 3 §§ 1.1.1, 1.1.1.1.  Alternative to the professional services provision, each policy also extends coverage to "personal injury arising out of the professional services of the Insured," which is not argued by either party here.  *See, e.g.*, Docket 14-3 (Merdes Firm Policy) at § 1.1.2; *id.* at § 2.19 (defining personal injury).

are specifically included under this policy by a separate endorsement identified in Item 7 of the Declarations.[53]

The Ninth Circuit has observed that under such a definition, "the existence of an attorney-client relationship is required, but not dispositive, as to whether [a] Defendant's acts were professional services."[54]

### A. The Merdes Law Office Policy

Both the retroactive coverage date and loss inclusion date of the Merdes Law Office Policy are April 1, 2013. In addition, the Merdes Law Office Policy's Special Endorsement excludes coverage for any claim or potential claim arising from professional services rendered by Mr. Merdes and the Merdes Law Office "in regard to the Insured's relationship with or work performed for or on behalf of [the Merdes Firm]."[55] Accordingly, only acts, errors, or omissions by Mr. Merdes or the Merdes Law Office in the provision of professional services rendered by these Defendants to their clients that occurred after April 1, 2013 are covered under the policy.

The Court finds the claims alleged in Leisnoi's Complaint do not plausibly arise from or in connection with professional services provided by Mr. Merdes or the Merdes Law Office to Leisnoi after April 1, 2013. Leisnoi's Complaint and the parties' filings in this case contain no indication that Mr. Merdes or the Merdes Law Office had an attorney-

---

[53] Docket 14-3 (Merdes Firm Policy) at § 2.22; Docket 14-4 (Merdes Law Office Policy) at § 2.23 (section numbers replaced by bullets).

[54] *See Gen. Acc. Ins. Co. v. Namesnik*, 790 F.2d 1397, 1399 (9th Cir. 1986) (interpreting an Arizona professional liability policy).

[55] Docket 14-4 (Merdes Law Office Policy) at 17.

client relationship with Leisnoi after April 1, 2013.[56]  Instead, Leisnoi alleges that Mr. Merdes and the Merdes Law Office conspired with the Merdes Firm and received transfers of "value and goodwill" from the Merdes Firm.[57]  Defendants assert that some of these transfers occurred after April 1, 2013, and therefore fall within the Merdes Law Office Policy's coverage.[58]  Defendants also assert that "Leisnoi complains about the Merdes Law Office performing professional services for former clients of the Merdes Firm" and that "[t]he definition of 'professional services' does not require the services be performed for Leisnoi."[59]  But the Merdes Law Office Policy requires that claims arise from or in connection with an act, error, or omission in "services and activities performed for others as an attorney in an attorney-client relationship on behalf of one or more clients."  This provision limits coverage to professional services that were or should have been provided by the Merdes Law Office or Mr. Merdes as its attorney.  But Leisnoi has not alleged that it had an attorney-client relationship with the Merdes Law Offices.  Instead, Leisnoi's claims against the Merdes Law Office arise from allegedly fraudulent transfers made to the Merdes Law Office, not its provision of professional services to Leisnoi.  Nor, in light of the Special Endorsement, can any alleged acts, errors, or omissions previously made by Mr. Merdes or the Merdes Firm in rendering professional

---

[56] Indeed, the Defendants appear to confirm that Mr. Merdes and the Merdes Firm did not provide professional services to Leisnoi. Docket 40 (Opp.) at 3 ("Here, Leisnoi cannot have a fee dispute with Ward Merdes or the Merdes Law Office, as Leisnoi never had an obligation to pay either of them money . . . .").

[57] Docket 14-2 (Leisnoi Compl.) at 4 ¶ 13.

[58] Docket 40 (Opp.) at 15–17; *see* Docket 40-3 (Merdes Exhibit 2) (evidencing client transfers from the Merdes Law Firm to the Merdes Law Office occurring after April 1, 2013).

[59] Docket 40 (Opp.) at 9 n.4.

services to Leisnoi form the basis for coverage under the Merdes Law Office Policy.[60] Therefore, Leisnoi's suit against Mr. Merdes and the Merdes Law Office clearly falls outside the professional services coverage provision of the Merdes Law Office Policy. Accordingly, ALPS is entitled to summary judgment that it has no duty to defend or indemnify Defendants under the Merdes Law Office Policy.

### B. The Merdes Firm Policy

A central allegation of Leisnoi's suit is that Mr. Merdes and the Merdes Firm failed to safeguard disputed client funds after the 2010 payment, a service that allegedly should have been provided to Leisnoi as a former client in an on-going fee dispute.[61] That alleged error or omission in professional services is sufficient to place Leisnoi's claims within the professional services coverage provision of the Merdes Firm Policy.

## V. ALPS' Arguments Against Coverage Under the Merdes Firm Policy

### A. The "Claim First Made" Clause

For coverage to arise under the Merdes Firm Policy, a claim against the Insured must be "first made against the Insured and first reported to [ALPS] during the policy period."[62] The policy period of the Merdes Firm Policy was July 18, 2012 through July 18, 2013. Defendants assert that Leisnoi's claims against the Merdes Firm were first

---

[60] *See, e.g.*, Docket 14-2 (Leisnoi Amended Compl.) at 5 ¶ 18 (alleging that Mr. Merdes had a duty to safeguard Leisnoi's disputed funds); *id.* at 8 ¶ 39 (alleging that Defendants provided "legal services" to Leisnoi such that their actions fall within the Alaska Unfair Trade Practices Act).

[61] Docket 14-2 (Leisnoi Amended Compl.) at 5 ¶ 18.

[62] Docket 14-3 (Merdes Firm Policy) at 3 § 1.1.

made during the policy period in Leisnoi's February 13, 2013 demand letter, and against Mr. Merdes in Leisnoi's suit filed May 20, 2013.[63]

ALPS asserts that "Leisnoi first demanded 'restitution of the monies paid Merdes following issuance of the execution' in and not later than its reply brief filed with the Alaska Supreme Court on March 23, 2011."[64]  In that appellate brief, Leisnoi set out additional proceedings that could occur if the Alaska Supreme Court ruled in its favor, including options for the recalculation of fees by the Alaska Bar Association fee arbitration panel and a trial court restitution award to Leisnoi.[65]  The conditional language used by Leisnoi, combined with its placement in an appellate reply brief, leads the Court to conclude that Leisnoi's argument in its appellate reply brief did not constitute a "claim" against the Merdes Firm or Mr. Merdes as a layperson would reasonably understand it under the policy definition.[66]

---

[63] Docket 40 (Opp.) at 7–8.

[64] Docket 35 (ALPS Motion) at 14.

[65] See Reply Brief for Appellant at *19–20, *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879 (Alaska 2013), 2011 WL 2214592 ("If relief is granted and the judgment is vacated . . . the matter would be remanded back for proceedings consistent with the decision of this Court, including a determination by the trial court of restitution due Leisnoi.  Merdes could argue for a further remand to the Alaska Bar Association fee arbitration panel to determine what fee, if any, is owing."); *id.* at *20 ("If this Court only overturns the trial court's order allowing issuance of the writ execution after five years, Leisnoi would be entitled to claim restitution of the monies paid Merdes following issuance of the execution.").

[66] See Docket 14-3 (Merdes Firm Policy) at 5 § 2.3 (defining "Claim" as "a demand for money or services, including but not limited to the service of suit or institution of arbitration proceedings against the Insured").

ALPS has failed to demonstrate that the claims in the Leisnoi suit were first made prior to July 18, 2012.[67]  Therefore, ALPS is not entitled to summary judgment as to its duty to defend under this clause.

## B.  The "Loss Inclusion Date & Retroactive Coverage Date" Clause

The Merdes Firm Policy's coverage only extends to claims that arise from an "act, error, or omission . . . that happened on or after the loss inclusion date and the retroactive coverage date" of the Policy.[68]  The Merdes Firm Policy has a retroactive coverage date for Mr. Merdes of January 1, 1990, and a loss inclusion date of July 18, 1989.  ALPS asserts that the underlying act, error, or omission in this case is the 1988 contingent fee agreement between Defendants and Leisnoi and therefore predates the Merdes Firm Policy's Loss Inclusion and Retroactive dates.[69]  This assertion is without merit.  The alleged acts taken by Defendants that give rise to the Leisnoi suit occurred after Leisnoi paid the Merdes Firm $643,760 in satisfaction of the 2010 writ of execution.  Accordingly, none of the claims alleged in the Leisnoi suit are precluded from coverage by the loss inclusion date and retroactive coverage date clause.  Therefore, ALPS is not entitled to summary judgment that it had no duty to defend based on this clause.

## C.  The "No Prior Knowledge" Provision

A requirement of coverage under the Merdes Firm Policy is that "at the effective date of this policy, no Insured knew or reasonably should have known or foreseen that

---

[67] This finding is distinct from whether Mr. Merdes or the Merdes Firm reasonably should have known that such claims would arise.  *See* discussion *infra* at § V.C.

[68] Docket 14-3 (Merdes Firm Policy) at 3 § 1.1.

[69] Docket 35 (Motion) at 18.

the act, error, or omission . . . might be the basis of a claim."[70]  The effective date of the

Merdes Firm Policy is July 18, 2012.  ALPS asserts that "Ward Merdes knew no later than

May 2009, when Leisnoi moved to vacate or amend the January 25, 1995 judgment [in

Superior Court], that Leisnoi contended the Merdes Firm should be required to reimburse

Leisnoi 'for all amounts paid under the judgment.'"[71]  It further asserts that "Ward Merdes

also knew no later than March 2011 [the date of filing of Leisnoi's reply brief] that Leisnoi

asserted its entitlement to restitution of monies paid after the writ of execution."[72]  But the

Leisnoi suit does not expressly seek reimbursement of its 2010 fee payment.  Instead, as

discussed above, it is the Merdes Firm and Mr. Merdes' alleged failure to safeguard that

payment that forms the basis of Leisnoi's suit, and for which Leisnoi seeks compensatory

damages in an amount "in excess of $643,760" as well as treble and punitive damages.[73]

Therefore, ALPS must show that Defendants knew or reasonably should have known that

their actions following Leisnoi's 2010 payment and prior to July 18, 2012 might be the

basis of the claims later raised in the Leisnoi suit.

Through an affidavit, Mr. Merdes and the Merdes Firm have sufficiently established

that whether they "knew" that their acts might be the basis for Leisnoi's claims is a

disputed material fact.[74]  However, whether those Defendants "reasonably should have

---

[70] Docket 14-3 (Merdes Firm Policy) at 3 § 1.1.

[71] Docket 35 (ALPS Motion) at 16 (quoting Docket 36-7 (Ex. G, Leisnoi 60(B) Memo) at 4).

[72] Docket 35 (ALPS Motion) at 16–17.

[73] Docket 14-2 (Leisnoi Amended Compl.) at 5–9.

[74] *See* Docket 40 (Opp.) at 11; Docket 40-1 (Merdes Affidavit) at 3 ¶ 19.

known" that their acts might be the basis of Leisnoi's claims, when viewing the facts in the light most favorable to Defendants, is a question of law.

Although Alaska law has not addressed the precise language at issue in the Merdes Firm Policy, the Alaska Supreme Court has considered similar language when analyzing the "discovery rule" under Alaska's statute of limitations. Under the discovery rule, "the relevant inquiry [as to when a statute of limitations begins to run] is the date when the claimant reasonably should have known of the facts supporting her cause of action."[75] Alaska law directs a court to "look to the date when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect her or her rights."[76] The Court finds this standard helpful to determining whether Mr. Merdes and the Merdes Firm "should have known" prior to July 18, 2012 that the actions alleged in the Leisnoi suit might be the basis for a claim.

Here, ALPS points to two events that it maintains show that those two Defendants reasonably should have known prior to July 18, 2012 that Leisnoi might bring a claim against them for the disputed funds—Leisnoi's May 2009 filing of its motion to vacate or amend the January 25, 1995 judgment and Leisnoi's March 2011 reply brief filed with the Alaska Supreme Court.[77]

When Leisnoi filed its May 2009 motion seeking to vacate or amend the 1995 judgment, the Merdes Firm was put on notice that Leisnoi contested that judgment's

---

[75] *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1275 (Alaska 2013) (quoting *Mine Safety Appliances Co. v. Stiles,* 756 P.2d 288, 291 (Alaska 1988)).

[76] *Gefre*, 306 P.3d at 1275 (quoting *Mine Safety Appliances*, 756 P.2d at 291).

[77] Docket 35 (Motion) at 16–17.

continued validity. But the Merdes Firm prevailed in the Superior Court, and in 2010 Leisnoi made full payment in satisfaction of the judgment even as it appealed the court's ruling, instead of depositing a supersedeas bond so as to stay the judgment as permitted under Alaska law. [78] The parties have not directed the Court to any Alaska law, ethical rule, or contract term that explicitly required Mr. Merdes or the Merdes Firm to independently safeguard the proceeds of a judgment of attorney's fees while on appeal. Therefore, although Leisnoi was pursuing an appeal, at the time of the 2010 payment Mr. Merdes and the Merdes Firm did not have enough information to alert a reasonable person that their unrestricted use of the 2010 payment might be the basis for a failure to safeguard claim.

The filing of Leisnoi's March 2011 reply brief did not change that state of affairs. Leisnoi's position on appeal was that it should be entitled to recover some or all of the money paid to the Merdes Firm to satisfy the 1995 judgment. But expressly stating that previously-implied position did not provide the Merdes Firm with any new information as to its obligation to safeguard the disputed funds while on appeal. Therefore, as of July 18, 2012, with Leisnoi's appeal still unresolved, Mr. Merdes and the Merdes Firm did not have enough information to alert a reasonable person that their use of the judgment funds might be the basis for a claim against them. Accordingly, the Court cannot find that Mr. Merdes or the Merdes Firm reasonably should have known or foreseen that their actions might be the basis of a claim prior to the effective date of the policy. Therefore, ALPS is

---

[78] *See* Alaska R. Civ. P. 62(d); Alaska R. App. P. 204(d).

not entitled to summary judgment that it has no duty to defend based on the no prior knowledge provision.

### D. The "Damages" Clause

The Merdes Firm Policy's coverage only extends to "all sums . . . that the Insured becomes legally obligated to pay as damages" for claims arising from the provision of professional services.[79] The policy defines "damages" as:

> Damages means any monetary award by way of judgment or final arbitration, or any settlement, but does not include:
>
> - punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations; or
> - awards deemed uninsurable by law; or
> - injunctive, declaratory, or other equitable relief, or costs or fees incident thereto; or
> - restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property presently or formerly held by an Insured. [80]

ALPS asserts that "here, the amounts sought by Leisnoi in the Underlying Suit are not 'damages' because Leisnoi seeks recovery of amounts paid to the Merdes Firm and funds presently or formerly held by an Insured."[81]

The majority of the relief sought by Leisnoi against Mr. Merdes and the Merdes Firm may well be excluded from indemnification coverage as injunctive relief, other

---

[79] Docket 14-3 (Merdes Firm Policy) at 3 § 1.1.

[80] Docket 14-3 (Merdes Firm Policy) at 6 § 2.6 (headings reformatted).

[81] Docket 35 (ALPS Motion) at 20.

equitable relief, punitive damages, or multiple damages.[82]   However, Count I of the Leisnoi suit alleges breach of contract against the Merdes Firm and seeks "financial damages in an amount to be established at trial, and in any event in excess of $643,760."[83]   On its face, Count I cannot definitively be characterized as seeking only restitution of the amount of the fee payment.[84]   Accordingly, at least Count I is not definitively precluded from coverage under the damages clause.  Therefore, ALPS is not entitled to summary judgment as to its duty to defend.[85]

### E.  The "Fee Exclusion" Clause

The Merdes Firm Policy provides that "this policy does not apply to . . . any claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held by an Insured."[86]

ALPS asserts that "[w]hen an underlying lawsuit only seeks relief within such an exclusion . . . the insurer has no duty to defend because the lawsuit is not even potentially

---

[82] *See* Docket 14-2 (Leisnoi Amended Compl.) at 9 (Prayer for Relief).

[83] Docket 14-2 (Leisnoi Amended Compl.) at 5 ¶¶ 14–20.

[84] *See Guard v. P & R Enters., Inc.*, 631 P.2d 1068, 1071 (Alaska 1981) (noting that "the purpose of awarding damages for a breach of contract is to put the injured party in as good a position as that party would have been had the contract been fully performed" and that "[c]onsequential losses . . . are also recompensable"); Alaska Pattern Jury Instruction 24.09A (noting that "the general measure of damages [includes] . . . incidental or consequential loss") (emphasis omitted).

[85] *See* Docket 14-3 (Merdes Firm Policy) at § 1.2.1 (setting out ALPS' rights and duties in defending claims against an Insured).

[86] Docket 14-3 (Merdes Firm Policy) at 9 §§ 3.1, 3.1.15.

covered."[87]  ALPS cites an Idaho case, *Continental Casualty Co. v. Brady*, for support.[88]

In *Brady*, disgruntled clients sued their attorney seeking compensatory damages of $122,000 as well as punitive damages after having paid $122,500 to the attorney pursuant to a fee agreement.[89]  The attorney's professional liability policy provided that the insurer would "not defend or pay for any fine, penalty, or claim for return of fees," and the insurer refused to defend.[90]  The Idaho Supreme Court agreed with the insurer, holding that "the focus of this exclusion is clearly on the relief requested.  If the party is requesting a 'return of fees,' it is immaterial what the actual theory of recovery is since the policy flatly excludes '*all claims*' for the return of fees."[91]  The court held that the plaintiffs' complaint "simply [did] not support a claim for any damages unrelated to the return of fees."[92]  Of significance to the court was that all the clients' factual allegations centered on the dispute over fees, each count expressly referenced the dispute over fees, and the damages requested were "nearly the full amount paid in fees."[93]

In this case, similar to *Brady*, the fees paid to the Merdes Firm and the Defendants' related acts are the primary focus of Leisnoi's suit.  However, in *Brady* the plaintiffs sought

---

[87] Docket 35 (ALPS Motion) at 21.

[88] 907 P.2d 807 (Idaho 1995).

[89] *Brady*, 907 P.2d at 809.

[90] *Brady*, 907 P.2d at 810 (internal quotation marks omitted).

[91] *Brady*, 907 P.2d at 810 (emphasis in original).  The parties in *Brady* did not dispute that the plaintiffs' punitive damages claim was excluded from coverage.  *Id.* at 810 n.1.

[92] *Brady*, 907 P.2d at 811.

[93] *Brady*, 907 P.2d at 810–11.

specific compensatory damages that equaled the difference between the $122,500 fee they had paid and the $500 fee they alleged was proper.[94] Here, Count I of the Leisnoi Complaint lacks a specific demand, but expressly seeks compensatory damages in excess of the $643,760 that Leisnoi paid to the Merdes Firm. Accordingly, the Court concludes that a duty to defend Mr. Merdes and the Merdes Firm on the underlying suit is not excluded entirely by the fee exclusion clause.[95] Therefore, ALPS is not entitled to summary judgment that it has no duty to defend based on the fee exclusion clause.

For the reasons discussed above, ALPS is not entitled to summary judgment that it has no duty to defend Mr. Merdes and the Merdes Firm under the Merdes Firm Policy because Leisnoi's suit creates the possibility of covered liability under that policy. Because "the duty to indemnify is not triggered until the indemnitee is liable for damages," ALPS is also not entitled to summary judgment as to its duty to indemnify under the Merdes Firm Policy.[96]

## CONCLUSION

For the reasons discussed above, IT IS ORDERED that:

1. ALPS' Motion for Summary Judgment at Docket 35 is GRANTED in part. Defendants Ward M. Merdes and the Merdes Law Office, P.C. are not entitled to defense or indemnity under Policy # ALPS16796, the Merdes Law Office Policy.

2. ALPS' Motion for Summary Judgment at Docket 35 is otherwise DENIED, for the reasons stated herein.

---

[94] *Brady*, 907 P.2d at 811.

[95] *See Dowdy*, 192 P.3d at 998 (ambiguities in insurance contracts should be construed in favor of the insured).

[96] *Hoffman Const. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 352 (Alaska 2001).

3. A Scheduling Conference to establish a trial date and associated pretrial deadlines shall be held on **February 25, 2015 at 4:00 p.m**. in the **Fairbanks Courtroom.** Parties wishing to appear telephonically may call (907) 677-6247 five minutes prior to the scheduled time for the hearing**.**

DATED this 29th day of December, 2014.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE