# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

ALPS PROPERTY & CASUALTY
INSURANCE COMPANY, f/k/a
Attorneys Liability Protection Society,
Inc., A Risk Retention Group,

                Plaintiff,

      v.

MERDES & MERDES, P.C.; MERDES
LAW OFFICE, P.C.; and WARD M.
MERDES,

                Defendants.

Case No. 4:14-cv-00002-SLG

## ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT

Before the Court are Plaintiff's and Defendants Merdes & Merdes, P.C. and Ward M. Merdes's Cross-Motions for Summary Judgment, at Dockets 151 and 153 respectively. The motions are fully briefed.[1] Oral argument on the motions was held on October 12, 2017.[2] For the reasons set forth below, the Court will deny Merdes & Merdes and Ward M. Merdes's Motion for Summary Judgment and will grant ALPS's Motion for Summary Judgment.

---

[1] *See* Docket 160 (Defendants' Opp'n); Docket 167 (Plaintiff's Reply); Docket 163 (Plaintiff's Opp'n); Docket 165 (Defendants' Reply).

[2] Docket 172 (Minutes re Oral Arg.).

**BACKGROUND**

This is the second time in this case that summary judgment is before the Court. In light of the Court's decision to grant the motion for summary judgment in favor of ALPS, the facts as construed in the light most favorable to Merdes & Merdes and Ward M. Merdes are as follows:

ALPS brought this action against Ward M. Merdes, Merdes & Merdes, P.C., and the law firm Merdes Law Office, P.C. (collectively "the Defendants"), seeking a declaration that the two professional liability insurance policies issued by ALPS to the Defendants did not require ALPS to defend or indemnify the Defendants with respect to an underlying state court lawsuit brought by Leisnoi, an Alaska Native corporation, against the Defendants in May 2013.[3]

On April 15, 2014, ALPS moved for summary judgment in this case.[4] On December 29, 2014, the Court granted summary judgment to ALPS on the Merdes Law Office's policy, and held that ALPS had no duty to defend or indemnify under that policy.[5] However, the Court denied ALPS's motion for summary judgment at that time as to the second policy, the policy for Merdes & Merdes, which also accorded coverage to Ward M. Merdes (collectively "the Merdes Firm").[6] The Court held "ALPS is not entitled to

---

[3] Docket 1 (Compl.); Docket 14 (Am. Compl.) at 11, 14.

[4] Docket 35 (Mot. for Summ. J.).

[5] Docket 56 (Order re Mot. for Summ. J.). The Court held that "the claims alleged in Leisnoi's Complaint do not plausibly arise from or in connection with professional services by Mr. Merdes or the Merdes Law Office to Leisnoi after April 1, 2013 [the effective date of the Merdes Law Office policy]." Docket 56 at 14.

[6] Docket 56 at 23.

summary judgment that it has no duty to defend Mr. Merdes and the Merdes Firm under the Merdes Firm Policy because Leisnoi's suit creates the possibility of covered liability under that policy."[7] The Court held that based on the "sparse record" then before the Court, Mr. Merdes and the Merdes Firm "would not have had enough information prior to the effective date of the Merdes Firm Policy to alert a reasonable person that their unrestricted use of the 2010 payment might be the basis for a failure to safeguard claim."[8]

The Merdes Firm Policy was effective from July 18, 2012 through July 18, 2013.[9] It is a "claims-made and reported" policy, extending coverage to claims first made against the insured and reported to the insurer during the effective period of the policy.[10] ALPS asserts in its renewed motion for summary judgment motion that it has no duty to defend or indemnify under the Merdes Firm Policy because prior to the effective date of the policy the Merdes Firm knew, or reasonably should have known, that Leisnoi had a potential claim for safeguarding against the Merdes Firm but did not report it to ALPS until February 2013.[11] The record is now considerably more developed than when the first summary judgment motion was before the Court in 2014. In particular, the Leisnoi state court case has now been fully concluded, with the recent issuance of an opinion by the Alaska Supreme Court in the case in November 2017.[12]

---

[7] Docket 56 at 23.

[8] Docket 56 at 19; Docket 120 (Order re Mot. for Trial and Mot. to Am.) at 2 n.5.

[9] Docket 14-3 (Merdes Firm Policy) at 1–2.

[10] *See generally* 13 Couch on Ins. § 186:13.

[11] Docket 151 at 18.

[12] *Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398 (Alaska 2017).

The Leisnoi state court case arises from a state court judgment entered in 1995 against Leisnoi, Inc. for attorney's fees in favor of Merdes & Merdes, P.C. On January 13, 2010, the Alaska Superior Court granted the Merdes Firm's motion for a writ of execution against Leisnoi for the balance then owing on the judgment, which was $643,760.[13] That same month, Mr. Merdes filed a new action in Alaska state court against Leisnoi alleging negligent infliction of emotional distress ("the NIED case").[14]

On February 22, 2010, Leisnoi appealed the writ of execution to the Alaska Supreme Court.[15] However, while the appeal was pending, on July 28, 2010, Leisnoi paid the Merdes Firm the entire remaining balance due of $643,760.[16] Within a few months after receiving the funds from Leisnoi, Ward Merdes contacted Steve Van Goor, the ethics attorney at the Alaska Bar Association, to discuss his receipt of the funds. Mr. Merdes testified that he called bar counsel because "Leisnoi was making noises" about whether the funds had to be kept separate.[17] Mr. Merdes testified that Mr. Van Goor informed him that the funds were not a client fee; rather, they were a "judgment collection," and Mr. Van Goor told Mr. Merdes to "[t]ake the money if you want it."[18]

---

[13] Docket 55 (Am. Answer) at 4, ¶ 24.

[14] Docket 151-3 (Ward Merdes's Dep.) at 16; *see also* Alaska state case no. 4FA-10-01104CI.

[15] Appellant's Opening Brief, *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879 (Alaska 2013) 2010 WL 5487194 at *1; Notice of Appeal, Alaska Superior Court Case No. 3AN-13-07180CI, February 22, 2010.

[16] Docket 55 at 4, ¶ 24.

[17] Docket 151-5 (Ward Merdes's Dep.) at 5-6.

[18] Docket 151-5 at 5.

The Merdes Firm initially deposited the money received from Leisnoi into its office trust account. Mr. Merdes testified at deposition that the money was deposited into the trust account because there was "a swirling mess of whatever is going on."[19] Mr. Merdes also testified that the funds probably went into the trust account because he was aware of Leisnoi's pending appeal of the writ at that time.[20]

Later in 2010, $543,480.17 of the funds were deposited into a new account listed as "Ward M. Merdes or Lori D. Merdes, FBO Case Number 3AN-85-16520."[21] FBO stands for "for the benefit of." The case number was from the original lawsuit from which the 1995 judgment arose.[22] Lori Merdes, the law firm's office manager, testified that the firm sets up FBO accounts for clients who "[w]ould like us to help them keep track of their money until they can figure out what to do next."[23] Ms. Merdes testified that she told the bank that she "wanted this money set aside with the maximum interest that they could put on it."[24]

In October 2012, Mr. Merdes moved $248,652.60 out of the FBO account to his own personal account.[25] He testified that he transferred these funds because he had

---

[19] Docket 151-3 at 10–11.

[20] Docket 151-3 at 11.

[21] Docket 151-3 at 14. Prior to the establishment of the FBO account, approximately $100,000 of the funds had been disbursed to Ward Merdes' ex-wife. Docket 151-3 at 20.

[22] Docket 151-3 at 14; *see also* Docket 151-2 (Arbitration Decision and Award).

[23] Docket 151-6 (Lori Merdes's Dep.) at 8. Ms. Merdes also testified that money is put into an FBO account when the firm is intending to safeguard those funds. Docket 151-6 at 9.

[24] Docket 151-6 at 18.

[25] Docket 151-3 at 16–19.

determined, after consulting with another attorney, that this amount constituted the value of the NIED case against Leisnoi. He had earlier dismissed that case.[26] sr. Merdes testified that the balance of the money in the FBO account was "rolled, incrementally, into [the Merdes Firm account] as needed."[27]

On February 1, 2013, the Alaska Supreme Court held that the writ of execution was unlawful because it violated the Alaska Native Claims Settlement Act's prohibition against contingency fee agreements.[28] The court held that Leisnoi was entitled to recover the $643,760 it had paid in July 2010 plus interest.[29] On February 13, 2013, Ward Merdes notified ALPS of a demand letter he had received from Leisnoi that same day as well as the Alaska Supreme Court decision.[30] ALPS denied coverage on February 21, 2013.[31]

On May 20, 2013, Leisnoi sued the Merdes Firm in state court, asserting breach of contract, fraudulent conveyance, conspiracy to fraudulently convey assets, unfair trade practices, punitive damages, and unjust enrichment (the "Underlying Suit").[32] Leisnoi's

---

[26] Docket 151-3 at 22–23.

[27] Docket 151-6 at 20.

[28] *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 887, 889 (Alaska 2013).

[29] *Id.*

[30] Docket 1 at 10, ¶ 44.

[31] Docket 1 at 10, ¶ 45. ALPS denied coverage, stating "no coverage exists under any ALPS policy for this matter" for four reasons: (1) the claim was not "first made and first reported during the effective period of the Policy"; (2) the repayment amount "does not constitute damages within the meaning of the Policy"; (3) there was no allegation that "the Firm committed any act of professional negligence"; and (4) fee disputes are not covered under the Policy. Docket 79-2 (Feb. 21, 2013 ALPS Denial of Coverage Letter) at 2–4.

[32] Docket 151-7 (Leisnoi's Second Am. Compl.) at 5–9. The defendants to the state court action are the same defendants in this case.

complaint included an allegation that the Merdes Firm "had a duty to safeguard those disputed funds under the contractual agreement with Leisnoi and under the Alaska Rules of Professional Conduct."[33] On July 11, 2013, Ward Merdes again notified ALPS that Leisnoi had filed the Underlying Suit, and again ALPS denied coverage.[34]

In early 2014, Mr. Merdes filed an amended 2012 tax return in which he declared all of the $643,670 as income and paid income taxes on it.[35]

On January 15, 2016, the Alaska Superior Court entered a final judgment in the Underlying Suit against the Merdes Firm, finding "actual damages amount to $643,760 that [the Merdes Firm] owed [Leisnoi], but avoided paying by fraudulently transferring assets . . . and should be the bas[is] for treble damages, which equals $1,931,280."[36] The trial court's Findings of Fact and Conclusions of Law focused on transactions after the Supreme Court's February 1, 2013 opinion, and held that all transfers out of the Merdes Firm after February 1, 2013 were void.[37]

---

[33] Docket 151-7 at 5.

[34] Docket 1 at 10–11, ¶¶ 46–47. ALPS denied coverage for the following reasons: (1) "[t]he claim was not made or reported during the period of the [Merdes Law Office] Policy" or the Merdes Firm Policy; (2) the "claim did not arise from or in connection with professional services"; (3) the "claim does not allege 'damages'" under the Policy; (4) the fee agreement was executed before loss inclusion and retroactive dates of the policies; (5) Exclusion 15 from the Policies provides that the Policies do not cover claims related to fee disputes; (6) the claim was first made prior to the effective date of the Policies; and (7) the Merdes Law Office Policy precludes coverage in this case because of the "Special Endorsement" in the Policy, which provides no coverage for any claim arising from an act, error, or omission in professional services. Docket 79-4 (July 11, 2013 ALPS Denial of Coverage Letter) at 8–13.

[35] Docket 154-2 (Ward Merdes Affidavit dated 4/9/14) at 4.

[36] Docket 151-11 (Final J.) at 1.

[37] Docket 151-10 (Findings of Fact and Conclusions of Law) at 8.

Leisnoi then sought prejudgment interest on the judgment. The state court initially found that the date the Merdes Firm first became aware of a possible claim was "either on May 23, 2013 (the date when Leisnoi served process on the Merdes Defendants) or on the date of the demand letter that Leisnoi sent to the Merdes Defendants" (February 13, 2013).[38] However, on January 15, 2016, the trial court ultimately decided that "prejudgment interest [totaled] $643,760 (computed at the annual rate of 3.75% from 7/28/2010 to date of judgment)."[39] Thus, the trial court commenced the prejudgment interest on the date that Leisnoi had paid the $643,760 to the Merdes Firm—July 28, 2010.

The Merdes Defendants appealed, raising, among other issues, the starting date for the prejudgment interest. On November 9, 2017, the Alaska Supreme Court affirmed the superior court's starting date for the prejudgment interest.[40] The court held that "Merdes had actual notice in July 2010 that Leisnoi continued to contest Merdes's entitlement to the money and would demand repayment, with interest, if Leisnoi prevailed

---

[38] Order re Defendant's Objections to Leisnoi's Revised Proposed Final J. at 3–4, Alaska Superior Court Case No. 3AN-13-07180CI, August 28, 2015. The Court has taken judicial notice of the filings made in the underlying state court action. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of state court filings in determining whether issue preclusion applied to the federal action).

[39] Final J. at 2, Alaska Superior Court Case No. 3AN-13-07180CI, January 15, 2016.

[40] *Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398 (Alaska 2017). The Supreme Court remanded the case but only as to the starting date for the prejudgment interest with respect to the Merdes Law Office and Ward Merdes, an issue which is not relevant to this order.

on appeal."[41] Thus, the court held, "[t]here is no unfairness in holding Merdes & Merdes to that date."[42]

On January 3, 2018, this Court requested the parties to submit supplemental briefing on the import of the Alaska Supreme Court decision on this case.[43] The Merdes Firm asserts that the Alaska Supreme Court did not address the "purported failure to safeguard client disputed funds in 2010."[44] Rather, it maintains that the only claim before the Alaska Supreme Court was Leisnoi's demand for the return of its 2010 payment if it prevailed on appeal—not a failure to safeguard claim. ALPS responds that "[t]he elements of collateral estoppel are met here" such that this Court must apply the Alaska Supreme Court's holding that the Merdes Firm was aware of Leisnoi's potential claim for safeguarding in 2010.[45]

## DISCUSSION

### I. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between ALPS and the Merdes Firm, and the amount in controversy exceeds the sum of $75,000.[46]

---

[41] *Id.* at 414.

[42] *Id.*

[43] Docket 174 (Order re Suppl. Br.).

[44] Docket 175 (Merdes Firm's Suppl. Br.) at 2.

[45] Docket 176 (ALPS's Suppl. Br.) at 3.

[46] Docket 14 at 2, ¶ 5.

Case No. 4:14-cv-00002-SLG, *ALPS v. Merdes & Merdes, P.C., et al.*
Order Re Cross Motions for Summary Judgment
Page 9 of 17

## II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) directs a court to grant summary judgment if the movant "show[s] that there is no genuine issue as to any material fact and that [the movant] is entitled to a judgment as a matter of law." When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[47] When faced with cross-motions for summary judgment, the court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[48] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[49] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[50]

## III.    Analysis

ALPS asserts that it "has no duty to defend the Underlying Suit because Defendants should have reasonably foreseen or did actually know that Leisnoi might make a claim against them prior to the effective date of the Merdes & Merdes Policy."[51] The Merdes Firm maintains that they "did not know of and could not reasonably anticipate

---

[47] *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986).

[48] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. For Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

[49] *Anderson*, 477 U.S. at 248.

[50] *Id.* at 249–50.

[51] Docket 151 at 18.

Leisnoi's false and fraudulent claims prior to 02/13/13," the date of Leisnoi's demand letter.[52] The Merdes & Merdes policy was in effect from July 18, 2012 to July 18, 2013.[53]

The Alaska Supreme Court recently ruled in the Underlying Suit, affirming the superior court's holding that the Merdes Firm fraudulently conveyed assets to the Merdes Law Office and Ward Merdes and holding that prejudgment interest on the judgment commenced as of July 28, 2010 as to Merdes & Merdes, the date of Leisnoi's $643,760 payment to that law firm.[54]

The court's discussion of the prejudgment interest issue was as follows:

> Under AS 09.30.070(b), prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier . . . .

---

[52] Docket 153 at 16.

[53] Docket 14-3 at 1. The Policy provides the following:

> 1.1 COVERAGE
> Subject to the **limit of liability,** exclusions, conditions and other terms of this policy, *the **Company** agrees to pay on behalf of the **Insured** all sums* (in excess of the **deductible** amount) *that the **Insured** becomes legally obligated to pay as **damages**, arising from or in connection with A **CLAIM** FIRST MADE AGAINST THE **INSURED** AND FIRST REPORTED TO THE **COMPANY** DURING THE **POLICY PERIOD**, provided that the **claim** arises from an act, error, omission* or **personal injury** that happened on or after the **loss inclusion date** and the **retroactive coverage date** set forth in Items 2 and 3 of the Declarations, and that the **claim** arises from or is in connection with:
> 1.1.1 *an act, error or omission in **professional services*** that were or should have been rendered by the **Insured,** or
> 1.1.2 a **personal injury** arising out of the **professional services** of the **Insured**, and further provided that at the **effective date** of the policy, no **Insured** knew or *reasonably* should have known or foreseen that the act, error, omission or **personal injury** might be the basis of a **claim.**

Docket 14-3 at 3, § 1.1 (emphasis in original).

[54] *Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398, 414 (Alaska 2017).

> Leisnoi contends that Merdes had actual notice that Leisnoi demanded return of the money at the time Leisnoi paid it—July 28, 2010—because Leisnoi had already appealed the writ requiring Leisnoi to pay that amount. Although initially siding with Merdes on this issue, the superior court ultimately adopted Leisnoi's position, and we agree that it was correct. Merdes had actual notice in July 2010 that Leisnoi continued to contest Merdes's entitlement to the money and would demand repayment, with interest, if Leisnoi prevailed on appeal.[55]

This Court requested supplemental briefing on the import of the Alaska Supreme Court decision on this case.[56] ALPS asserts that collateral estoppel applies to this case and "Merdes is bound here by the Alaska Supreme Court's holding" that it was aware in July 2010 that Leisnoi bring a claim against it if it prevailed on the appeal.[57]

Collateral estoppel, or issue preclusion, "bars relitigation, even in an action on a different claim, of all issues of fact or law that were actually litigated and necessarily decided in a prior proceeding."[58] As a matter of full faith and credit, 28 U.S.C. § 1738 requires courts to apply the collateral estoppel principles of the state from which the judgment was entered.[59] Under Alaska law, there are four elements for the application of collateral estoppel: "(1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is

---

[55] *Id.* (citations omitted).

[56] Docket 174.

[57] Docket 176 at 3. The Merdes Firm acknowledged in its summary judgment briefing to this Court the "risk of collateral estoppel" if this Court were to consider the prior knowledge exclusion while the state court appeal was pending, but on a different issue—"Ward Merdes' actual intent to defraud or delay Leisnoi as a creditor." *See* Docket 160 at 33.

[58] *Campion v. State, Dep't of Cmty. & Reg'l Affairs, Hous. Assistance Div.*, 876 P.2d 1096, 1098 (Alaska 1994) (quoting *Americana Fabrics v. L & L Textiles*, 754 F.2d 1524, 1529 (9th Cir. 1985)).

[59] *Grogan v. Garner*, 498 U.S. 279, 284 (1991).

identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment."[60]

Although ALPS was not a party to the Leisnoi state action, the Merdes Firm was a party to that action and is the party against whom preclusion is sought; therefore the first element is satisfied.[61] The issue to be precluded is also identical to the issue decided in the state court action—the date on which the Merdes Firm first became aware of a potential claim by Leisnoi against it. Alaska Statute § 09.30.070(b) provides "prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier." The Merdes Firm Policy contains virtually the same language, as it extends coverage when:

> the claim arises from or is in connection with: . . . a personal injury arising out of the professional services of the Insured, and further provided that at the effective date of the policy, no Insured knew or *reasonably* should have known or foreseen that the act, error, omission or personal injury might be the basis of a claim.[62]

---

[60] *Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011).

[61] *See id.* ("Although the state actor defendants in Latham's application for post-conviction relief and class action lawsuit were different, Latham was a party in both actions, and he is the party against whom preclusion is sought.").

[62] Docket 14-3 at 3, § 1.1 (emphasis omitted). Although the Alaska Statute and the Policy use "may" and "might" respectively, the application of collateral estoppel is the same because the Merdes Firm became aware of Leisnoi's potential claim in July 2010.

Thus, the statute commences prejudgment interest on the date that the defendant has received written notice "that a claim may be brought," while the policy excludes coverage when the Insured had prior knowledge of an act that "might be the basis of a claim."

The Alaska Supreme Court determined that "Merdes had actual notice in July 2010 that Leisnoi continued to contest Merdes's entitlement to the money and would demand repayment."[63] Thus, the issue that the Alaska Supreme Court determined—when the Merdes Firm received written notice from Leisnoi that a claim may (or might) be brought against it—is substantively identical to the issue before this Court.

The third element for collateral estoppel is also met: the issue was resolved by the state court after the appeal of a final judgment. The Alaska Supreme Court has held that "the accurate definition of 'finality' in the offensive collateral estoppel context is 'fully litigated.'"[64] For an issue to be fully and fairly litigated in the first action, it requires "[(1)] that the issue has been effectively raised in the prior action, either in the pleadings or through development of the evidence argued at trial or on motion; and [(2)] that the losing party has had 'a fair opportunity procedurally, substantively, and evidentially' to contest the issue."[65]

---

[63] *Merdes & Merdes*, 410 P.3d at 414 (citations omitted).

[64] *Borg-Warner Corp. v. Avco Corp. (Lycoming Div.)*, 850 P.2d 628, 635 (Alaska 1993) (quoting *Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1190–92 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007 (1983), *cert. denied sub nom. Binliff v. Chemetron Corp.*, 460 U.S. 1013 (1983)).

[65] *Murray v. Feight*, 741 P.2d 1148, 1153–54 (Alaska 1987) (quoting *Overseas Motors, Inc. v. Import Motors Ltd., Inc.*, 375 F. Supp. 499, 516 (E.D. Mich. 1974) *aff'd*, 519 F.2d 119 (6th Cir. 1975)).

The issue of when the Merdes Firm first became aware of a potential lawsuit was fully litigated before the state courts, most recently on appeal to the Alaska Supreme Court. The Merdes Firm asserted in its opening brief to that court that "Leisnoi was only entitled to prejudgment interest from the date of its 02/13/2013 demand letter."[66] It further asserted that "the Superior Court's calculation of prejudgment interest from 07/28/2010 is contrary to AS 09.30.070(b) and the Superior Court's own 08/28/15 Order, [and therefore,] this Court should reverse the Superior Court's award of prejudgment interest."[67] Leisnoi responded:

> The purpose of awarding prejudgment interest is to compensate a plaintiff for the loss of use of the money from the date of injury until the date of judgment. Prejudgment interest thus runs from the date of Leisnoi's payment—July 28, 2010. At that time, [the Merdes Firm] had actual notice that Leisnoi demanded return of the money because Leisnoi had already appealed the writ requiring Leisnoi to pay that amount. Because [the Merdes Firm] had actual knowledge of the legal proceedings seeking return of the money, prejudgment interest runs from the date of payment.[68]

The Alaska Supreme Court acknowledged the Merdes Firm's argument to be "that prejudgment interest should run instead from early 2013, following the publication of our opinion—from either the date of a letter from Leisnoi to Merdes demanding repayment or

---

[66] Brief for Appellant, *Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398 (Alaska 2017) 2017 WL 5181610 at *6.

[67] *Id.* at *39.

[68] Brief for Appellee, *Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398 (Alaska 2017) 2017 WL 5181610, at *33–34.

the date Leisnoi filed suit two months later."[69] Accordingly, the issue before this Court was fully litigated in the Underlying Suit that ended in a final judgment.[70]

Finally, computation of the prejudgment award included the date upon which the Merdes Firm knew about the potential lawsuit and was essential to the final judgment that the Supreme Court affirmed.

All elements of collateral estoppel have been met and this Court is bound by the Alaska Supreme Court's determination that the Merdes Firm had knowledge Leisnoi's potential claim in July 2010.[71] The Merdes Firm Policy does not provide coverage for claims knew might be the basis for a claim prior to the policy's effective date of July 18, 2012. Therefore, ALPS has no duty to defend or indemnify the Merdes Firm in the Underlying Suit.[72]

---

[69] *Merdes & Merdes*, 410 P.3d at 414.

[70] The Court notes that the parties in the Underlying Suit took differing positions on this issue at different time during that case. For example, when the statute of limitations was at issue, in April 2014, Leisnoi argued "[o]n February 1, 2013, the Alaska Supreme Court issued its decision ordering Merdes & Merdes, PC to return $643,760, plus interest, to Leisnoi. Before that date, Merdes & Merdes did not owe Leisnoi this money. Leisnoi therefore did not yet have claims against Merdes & Merdes or any other Merdes defendant." Opposition to Merdes Defendants' Motion Asserting Statutes of Limitations at 2, Alaska Superior Court Case No. 3AN-1307180CI, April 28, 2014. However, for purposes of collateral estoppel, the Court looks to the case dispositive opinion of the Alaska Supreme Court and not to the parties' filings along the way.

[71] Even if this Court were to find that collateral estoppel did not apply to this case, the now supplemented record demonstrates that the Merdes Firm became aware of Leisnoi's potential claim in July 2010. *See supra* pp. 4–6.

[72] *See Hoffman Const. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 352 (Alaska 2001) ("[T]he duty to indemnify is not triggered until the indemnitee is liable for damages.").

## CONCLUSION

In light of the foregoing, the Court finds that entry of judgment in favor of ALPS is warranted. Accordingly, Plaintiff's Motion for Summary Judgment at Docket 151 is hereby GRANTED and Defendants Merdes & Merdes, P.C. and Ward M. Merdes's Motion to Summary Judgment at Docket 153 is DENIED.

IT IS FURTHER ORDERED that ALPS is entitled to judgment in the amount of $14,512.10 as reimbursement for the attorney's fees it paid on Defendants' behalf in this action.

The Clerk of Court is directed to enter a FINAL JUDGMENT accordingly.

DATED this 12th day of March, 2018.

>   /s/ Sharon L. Gleason
>   UNITED STATES DISTRICT JUDGE